■ V. ZAPPALA & CO., INC., Respondent, v PYRAMID COMPANY OF GLENS FALLS et al., Appellants. — Appeal from a judgment of the Supreme Court in favor of plaintiff, entered June 3, 1980 in Warren County, upon a decision of the court at a Trial Term, without a jury. Plaintiff, a concrete block manufacturer, entered into a contract with the defendant real estate developer (Pyramid) to manufacture and deliver pigmented concrete blocks to be used in the construction of a shopping mall. The agreement provided, in part: "All block units to conform in color and texture to standard sample W-2 furnished by Zappala Block to Owner. The manufacturer shall be responsible for maintaining consistency of color and texture throughout the entire run. Block that does not conform shall not be considered purchased." Plaintiff supplied a total of 52,060 blocks at an agreed price of $76,403.01. Pyramid made no payment and plaintiff commenced this action to foreclose on its mechanics lien. Pyramid counterclaimed, seeking in excess of $200,000 in damages allegedly caused by the failure of some of the blocks delivered by plaintiff to conform in color to the standard sample, as required by the contract. The trial court ruled in favor of plaintiff and dismissed the counterclaim. This appeal ensued. Since the transaction at issue here involved the sale of goods, the rights and remedies of the parties are governed by the provisions of article 2 of the Uniform Commercial Code (Uniform Commercial Code, § 2-102). Pursuant to section 2-601 of the code, when a seller tenders goods that fail in any respect to conform to the contract, the buyer may accept or reject the whole or accept any commercial unit or units and reject the rest. Any goods accepted by the buyer must be paid for at the contract rate (Uniform Commercial Code, § 2-607, subd [1]). With respect to plaintiff's action, the trial court found, *inter alia,* that of the 52,060 blocks delivered by plaintiff, some 904 blocks did not conform in color; that the mason contractor, Pyramid's agent at the job site, initially sorted out and set aside these off-color blocks; that these blocks were later used in the walls of the shopping mall; and that the use of the discolored blocks in the walls occurred as a result of direct orders from and the acquiescence of Pyramid through its agents or representatives. These findings, based in part upon the trial court's determination as to the credibility of certain witnesses, are supported by the record, and we perceive no reason to disturb them. Accordingly, we also agree with the trial court's conclusion that by using the nonconforming blocks in the walls of its shopping mall, Pyramid accepted them (Uniform Commercial Code, § 2-606, subd [1], pars [b], [c]). Pyramid contends that despite its acceptance of the discolored blocks, it could later reject them since its acceptance was induced by plaintiff's assurances

---

that the nonconformity would be cured (see Uniform Commercial Code, § 2-608, subd [1]). However, assuming that Pyramid's acceptance of the discolored blocks was in fact induced by plaintiff's assurances, revocation of acceptance must occur within a reasonable time (Uniform Commercial Code, § 2-608, subd [2]) and the record reveals that Pyramid made no effective revocation. In its counterclaim, Pyramid seeks to recover the cost of coating the walls of its mall with Silibond and the cost of recoating the walls every five years for the next 35 years. Since Pyramid timely notified plaintiff of the discoloration in the blocks, it may recover damages for "the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable", despite its acceptance of the blocks (Uniform Commercial Code, § 2-714, subd [1]).* Plaintiff initially offered to coat a portion of the mall's walls with Silibond, but it rejected Pyramid's counteroffer that it coat all the walls and provide a 30-year maintenance bond. Pyramid also rejected plaintiff's later offer to replace the discolored blocks, which the trial court found plaintiff could have done prior to the opening date of the mall. Under these circumstances, the trial court properly rejected Pyramid's claim for damages for the cost of coating the walls upon the ground that these damages were not proximately caused by plaintiff's breach of the contract. Plaintiff's delivery of discolored blocks did constitute a breach of an express warranty (see Uniform Commercial Code, § 2-313), and pursuant to subdivision (2) of section 2-714 of the code, the measure of damages "is the difference * * * between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount". In light of the foregoing, we find no special circumstances and, accordingly, Pyramid's recovery on its counterclaim was limited to the measure of damages provided for in the code. At trial, Pyramid made an offer of proof of the reduced value of the discolored blocks, but the trial court refused to accept it on the ground that this theory of liability was not pleaded in Pyramid's complaint. We see no abuse of discretion in the trial court's ruling (cf. *Landers v Automatic Irrigation Design, Div. of Stewart Senter,* 44 AD2d 836; *Metacoustic, Inc. v Truitt Bros.,* 32 AD2d 826; *Greco v Romanelli,* 13 AD2d 504). The judgment should be affirmed in all respects. Judgment affirmed, with costs. Mahoney, P. J., Sweeney, Kane, Casey and Weiss, JJ., concur.

---

* The contract provided that nonconforming blocks would be considered not to be purchased, but since the contract did not provide that this remedy was exclusive, Pyramid can resort to alternative remedies provided by the code (Uniform Commercial Code, § 2-719, subd [1], par [b]).