SHOKAI FAR EAST LTD., Plaintiff,

v.

ENERGY CONSERVATION SYSTEMS,
INC., Defendant.

No. 84 Civ. 0663 (RWS).

United States District Court,
S.D. New York.

Feb. 21, 1986.

Parker, Chapin, Flattau & Klimpl, New York City, for plaintiff; Barry J. Brett, Babette T. Rubin, of counsel.

Baden, Kramer, Huffman & Brodsky, P.C., New York City, for defendant; Douglas J. Kramer, of counsel.

OPINION

SWEET, District Judge.

Plaintiff Shokai Far East Ltd. ("Shokai"), brought this action to recover the unpaid portion of the agreed price of certain goods ordered by defendant Energy Conservation Systems, Inc. ("ECS"), as well as certain incidental damages and relief pursuant to Rule 11, Fed.R.Civ.P. Upon all the proceedings heretofore had herein, including a bench trial held from November 14 to 19,

1985, and the following findings of fact and conclusions of law, judgment will be entered for Shokai in the amount of $103,832.26 plus incidental damages and interest as set forth below.

**Prior Proceedings**

This action was commenced in the Supreme Court of the State of New York and removed to this court by ECS. The answer submitted by ECS set forth the events upon which ECS intended to rely to substantiate its claim of defectiveness of certain of the goods purchased from Shokai, namely, certain events occurring in September, 1983. The dates were reaffirmed by defendant's deposition testimony. On the eve of the scheduled trial, counsel to Shokai received a letter dated August 26, 1985 from ECS counsel admitting that certain of the statements in ECS' answer were untrue and withdrawing prior deposition testimony. If these allegations in the affirmative defenses of the answer had not been made and then withdrawn at the eve of trial, Shokai might have secured judgment on the pleadings or summary judgment.

**Parties**

Shokai is a corporation incorporated under the laws of the State of New York with its principal place of business in Hartsdale, New York. It is in the business of importing into the United States electronic component parts manufactured in the Orient. It does not manufacture or store goods. The products it sells are manufactured or delivered by vendors at the request of Shokai after Shokai has received an order from its customer. The products are then shipped directly to the customer of Shokai in the manner designated by the customer.

ECS is a corporation incorporated under the laws of the State of Virginia with its principal place of business in Arlington, Virginia. It is in the business of manufacturing lighting fixtures and related products, including power reducers which are inserted into a fluorescent lighting system to reduce the amount of light emitted and consequently reduce energy costs. The power reducers manufactured by ECS incorporate a component known as a capacitor, the function of which is to reduce the current passing through the fluorescent fixture and thus decrease the light output. ECS used various rated metalized polyester capacitors (collectively "capacitors") in the models of power reducers manufactured by ECS. The rating of a capacitor is designated by microfarad value, voltage and permissible variations from tolerance, for example, a 2.5 MFD 10% is a 2.5 microfarad capacitor, 250 volts with a permissible variation from tolerance of 10%.

**The Transaction at Issue**

Prior to March of 1983, ECS had no manufacturing facilities. During that time, it merely distributed power reducers manufactured by a company called Energy Savings Devices ("ESD") in St. Paul, Minnesota, which had used Shokai as a source of capacitors. No complaints were received by Shokai with respect to capacitors used in the power reducers manufactured by ESD. When ECS began production of power reducers at its own facilities in Virginia after March, 1983, ECS submitted orders for capacitors to Shokai. ECS did not provide specifications or information relating to the use to which the capacitors would be put or the conditions in which they would be used. ECS manufactured almost five times the number of power reducers made previously by ESD and ran such tests as it deemed necessary on all capacitors it received. ECS had a supply of power reducers in its possession before delivery to any customers. In the early part of 1983 ECS expected to sell about 400,000 power reducers and forecast a need for an equivalent number of capacitors. Ultimately it sold only about 80,000 and by August of 1983 had begun to reassess its requirements for capacitors.

Between April 15, 1983 and July 12, 1983, ECS placed the following written orders with Shokai for capacitors.

| Date of Order Purchase Order No. | Type of Capacitor | Quantity |
|---|---|---|
| April 15, 1983 (No. 4153) | 2.5 MFD 10% 250 VAC | 100,000 |
| | 5 MFD 10% 250 VAC | 100,000 |
| | 2.5 MFD 10% 320 VAC | 100,000 |
| | 4 MFD 10% 320 VAC | 100,000 |
| June 27, 1983 (No. 6273) | 2.5 MFD 10% 250 VAC | 80,000 |
| | 5 MFD 10% 250 VAC | 30,000 |
| | 4 MFD 10% 320 VAC | 10,000 |
| July 12, 1983 (No. 7123) | 2.5 MFD 10% 250 VAC | 50,000 |
| | 5 MFD 10% 250 VAC | 50,000 |

Shokai followed its customary pattern, notifying its Tawainese manufacturers and arranged for delivery to ECS as follows:

| Date of Order (Purchase Order No.) | Date of Delivery | Quantity Delivered |
|---|---|---|
| April 15, 1983 (No. 4153) | June 10, 1983 | 20,000 2.5 MFD 10% 250 VAC |
| | | 20,000 5 MFD 10% 250 VAC |

(On or about June 27, 1983, ECS requested Shokai to decrease the number of capacitors ordered under purchase order No. 4153, to which reduction Shokai agreed, resulting in the quantities received by ECS being less than the 400,000 capacitors

| | June 27, 1983 | 10,000 of each of the four (4) types ordered |
|---|---|---|
| | August 9, 1983 | 10,000 of each of the four (4) types ordered |
| | August 11, 1983 | 20,000 2.5 MFD 10% 250 VAC |
| | Sept. 15, 1983 | 10,000 of each of the four (4) types ordered |
| July 12, 1983 (No. 7123) | Sept. 7, 1983 | 17,500 2.5 MFD 10% 250 VAC |
| | | 16,500 5 MFD 10% 250 VAC |
| | Oct. 4, 1983 | 32,500 2.5 MFD 10% 250 VAC |
| | | 33,500 5 MFD 10% 250 VAC |

Shokai sent invoices to ECS at the time of each delivery reflecting the agreed upon purchase price and requesting payment net ten days and requiring any claims to be made within five days. ECS made payments to Shokai as set forth below:

| Date of Delivery | Amount Invoiced by Shokai | Amount of Payment | Date Payment Sent by Energy |
|---|---|---|---|
| 1. P/O No. 4153 | | | |
| June 10, 1983 | $28,992.22 | $20,000.00 | June 23, 1983 |
| | | 8,992.22 | July 1, 1983 |
| June 27, 1983 | $30,450.00 | $20,000.00 | July 15, 1983 |
| | | 10,450.00 | July 25, 1983 |
| August 9, 1983 | $30,450.00 | $15,000.00 | August 25, 1983 |
| | | 15,450.00 | September 14, 1983 |
| August 11, 1983 | $13,720.50 | $13,720.50 | August 19, 1983 |
| Sept. 15, 1983 | $30,450.00 | $10,000.00 | November 1, 1983 |
| | | 10,450.00 | November 14, 1983 |
| | BALANCE OWED | $10,000.00 | |

| Date of Delivery | Amount Invoiced by Shokai | Amount of Payment | Date Payment Sent by Energy |
|---|---|---|---|
| 2. P/O No. 7123 | | | |
| Sept. 7, 1983 | $24,534.92 | $10,150.00 | October 4, 1983 |
| | | 11,797.50 | October 25, 1983 |
| October 4, 1983 | $47,280.94 | –0– | |
| | BALANCE OWED | $49,866.36 | |

As reflected above, ECS ordered 100,000 of the 10% 250 VAC capacitors from Shokai on or about July 12, 1983 under purchase order No. 7123, which order, at the request of ECS, was to be shipped by air freight. Shokai caused the goods to be delivered to ECS in two shipments, 34,000 pieces on or about September 7, 1983 and 66,000 pieces on or about October 4, 1983, each shipped by air. By statement No. 9414 dated August 30, 1983, Shokai invoiced ECS $24,534.92 for the first shipment of the goods sold and by statement No. 5809 dated October 3, 1983 Shokai invoiced ECS $47,278.94 for the second shipment. ECS made two payments in the aggregate amount of $21,947.50 to Shokai for the goods delivered to ECS by Shokai in accordance with purchase order No. 7123, and received and accepted the capacitors. No competent proof was adduced to establish that purchase order No. 7123 was either cancelled or modified. ECS made late payments for goods previously received and by the beginning of October, 1983, Shokai had claims in excess of $100,000 for goods sold and delivered to ECS.

When the first shipment of goods ordered by ECS under purchase order No. 6273 with an agreed price of $39,175 arrived in the United States in the middle of October, 1983, Shokai determined to exercise its rights under Section 2–705 of the Uniform Commercial Code, as enacted in New York State, and diverted these goods to its offices. By telephone call, by letter dated October 27, 1983 and by invoice No. 5869 dated October 24, 1983, Shokai advised ECS of this diversion and the concern of Shokai over the delinquency in payment, both in time and amount.

ECS continued to make payments to Shokai in October and November for goods delivered in August and September, and in fact, as late as November 15, 1983, requested additional merchandise and promised further payments in $10,000 installments "as funds become available and as soon as possible." By late November of 1983, the time when the second shipment of goods ordered by ECS under purchase order No. 6273 arrived in the United States, the ECS unpaid balance totalled $138,622.26. Shokai again diverted the goods under purchase order No. 6273, and informed ECS of the stopping of delivery by telephone call and by invoice No. 9563 dated November 28, 1983.

**The Failure of the Power Reducers**

ECS had never experienced a failure of any of its power reducers prior to the failure in late October, 1983, though over 180,000 of these power reducers were made with capacitors purchased from Shokai. As recently as July and August, 1983, Charles E. Smith and Co., had installed in a large development in Arlington, Virginia, 80,000 power reducers that used Shokai capacitors, none of which failed. In late October, 1983, ECS learned of the first failure of its energy savings device. Additional failures occurred in early November at installations in public schools in Washington County, Maryland. The power reducers that failed utilized Shokai's capacitors which were delivered to ECS on or after August 9, 1983.

After ECS began experiencing these failures, on November 14, 1983, it stopped its fabrication of power reducers using the Shokai capacitors. At that time it had 165,-

700 Shokai capacitors in inventory. On November 30, a telephone call was made by Shokai to ECS seeking payment. It was returned by the president of ECS who notified Shokai of the failures, following this notification by letter of December 6 which Shokai responded on December 7 noting the absence of prior complaints and requesting samples of the capacitors involved.

In February, 1984, ECS ordered from Quantum Thayer, a domestic supplier, over 100,000 capacitors rated identically to those supplied by Shokai. Power reducers using Quantum Thayer capacitors have never failed even though they have been installed in over 150 buildings of all sizes, descriptions and ages.

ECS had no knowledge of the ballasts, power sources, energy level or other field conditions to which its products would be subjected, and these variables could have different effects on its products and components used therein. The physical examination of ECS' power reducers demonstrated that a corona effect was present in some applications. This corona effect resulted in a melt-down of the components of the capacitors. Scientific principles establish that corona cannot exist without a minimum voltage of 280 volts, which voltage can be produced by use of a power reducer with certain combinations of ballasts and other conditions. The capacitor sold by Shokai was not stated, designed or intended for use under such conditions, and ECS never asked Shokai for a capacitor with those specifications. The preponderance of the evidence, factual and expert, fails to establish that a defect in the capacitor caused the failure of the power reducer.

ECS cannot identify the lot (as that term is defined in Section 2–105 of the Uniform Commercial Code, as enacted in New York State) of capacitors, about which it was complaining since all capacitors, upon delivery and after random sample testing, were stored with all others in inventory. Consequently, there is no evidence to show that any particular batch of capacitors was defective. ECS had no consistent testing pro-

cess for the components of its power reducers. The capacitors which ECS elected to purchase from Quantum Thayer to use in 1984 possessed different specifications and cost twice as much as the Shokai capacitors.

Shokai placed one ad in the New York Times, seeking to resell the goods ordered by ECS under purchase order No. 6273 which were not delivered to ECS. It resold the entire number of 5 MFD 10% 250 VAC capacitors (that is, 30,000) and 23,000 of the 80,000 total number of 2.5 MFD 10% 250 VAC capacitors for $34,790. The remaining undelivered capacitors have not been added to the Shokai catalog of advertised products available for sale.

**Conclusions**

 The court has jurisdiction over this action and the parties. The facts described above establish that ECS accepted the goods delivered to ECS in accordance with section 2–606 of the Uniform Commercial Code. N.Y.U.C.C. § 2–606. A buyer has a reasonable time to inspect goods upon their receipt and to notify seller of his rejection if the goods are found to be nonconforming. N.Y.U.C.C. § 2–602(1). The determination of a reasonable time period depends on the particular circumstances of each case. *See Sherkate Sahami Khass Rapol v. Henry R. Jahn & Son,* 701 F.2d 1049, 1051 (2d Cir.1983). ECS' notice of rejection, at the earliest November 30, was not timely in view of the several months which passed since Shokai began shipping the capacitors. Furthermore, ECS' use of the capacitors after testing them constitutes acceptance under the U.C.C. *See V. Zappata & Co., Inc. v. Pyramid Co.,* 81 A.D.2d 983, 439 N.Y.S.2d 765, 767 (N.Y. App.Div.1981); *In re Barney Schogel, Inc.,* 12 B.R. 697 (Bankr.S.D.N.Y.1981). ECS failed to establish that the capacitors were non-conforming.

 ECS is required to pay at the contract rate for the goods delivered and accepted under N.Y.U.C.C. §§ 2–607(1), 2–709(1)(a) and, therefore, Shokai is entitled to an award of unpaid balance in delivery orders 4153 and 7123 as follows: On pur-

chase order No. 4153 and accepted by ECS, $10,000 remains unpaid; on purchase order No. 7123, $49,866.36 remains unpaid. Shokai is entitled to interest thereon at an annual rate of ten percent (10%), *see* N.Y.C. P.L.R. § 5001, as follows: from September 16, 1983 on $10,000, from September 9, 1983 on $2,587.42, from October 13, 1983 on $47,278.94.

 Shokai has resold a portion of the goods identified to purchase order No. 6273 which were withheld, having a value of $34,790. Shokai continues to hold the balance of the goods identified to the purchase order No. 6273 which were withheld. Under Section 2–709(1)(b) of the Uniform Commercial Code as enacted in New York State, Shokai is entitled to recover the price of goods identified purchase order No. 6273 in the amount of $78,755.90 with interest at an annual rate of 10% from November 3, 1983 on $39,580.90 and from December 8, 1983 on $39,175, less a credit to ECS in the amount of $34,790 for goods resold, having appropriately stopped delivery of the goods under purchase order No. 6273 pursuant to Section 2–705 of the Uniform Commercial Code, as enacted in New York State. In accordance with N.Y.U.C.C. § 2–709(2), the capacitors identified by No. 6273 which were not resold must be made available to ECS upon payment of the judgment.

 In addition, Shokai has incurred the following charges:

| | | |
|---|---|---|
| (a) | Warehouse charges to date for goods, the delivery of which was stopped by reason of the delinquency of payments by ECS | $782.32 |
| (b) | Trucking charges for portions of the goods stored in the warehouse to offices of Shokai for resale | $222.00 |
| (c) | Advertising expenses incurred in connection with resale of goods. | $162.80 |
| (d) | Trucking costs of first shipment of goods under purchase order No. 6273 to offices of Shokai | $405.90 |

Under Sections 2–709 and 2–710 of the Uniform Commercial Code, as enacted in New York State, Shokai is entitled to an award for the incidental expenses set forth above and continuing until the stored goods are removed, together with interest at an annual rate of 10% on each such charge from the date on which the same was paid.

 The counterclaims pleaded by ECS are dismissed as not having been established by a preponderance of the evidence as found above. Rule 11 of the Fed.R. Civ.P. permits the imposition by the court of an appropriate sanction if a pleading is signed in violation of the mandate set forth therein. *See Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985). Reasonable counsel fees for two days of trial in the amount of $2,400 will be imposed against ECS because of its assertion of defenses which were without basis in fact and were withdrawn just before the trial began. Without these unfounded allegations the need for trial would have been obviated.

Submit judgment on notice.

IT IS SO ORDERED.