**COMMONWEALTH EDISON COMPANY, Plaintiff,**

v.

**ALLIED CHEMICAL NUCLEAR PRODUCTS, INC., Gulf Oil Corporation, Scallop Nuclear, Inc., General Atomic Company, a partnership, and Allied–General Nuclear Services, a partnership, Defendants.**

No. 79 C 2866.

United States District Court,
N.D. Illinois, E.D.

April 28, 1988.

Henry L. Mason, III, Sidley & Austin, Chicago, Ill., for plaintiff.

H. Roderic Heard, Wildman, Harrold, Allen & Dixon, David M. Spector, Isham Lincoln & Beale, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In this diversity breach of contract case, plaintiff Commonwealth Edison Company ("Edison") sued defendant Allied–General Nuclear Services ("AGNS") for breach of an agreement for nuclear fuel recovery

services ("Contract"). Currently before the Court is AGNS's motion for partial summary judgment on storage and waste costs. For the reasons set forth below, we deny AGNS's motion for partial summary judgment under Fed.R.Civ.P. 56(c) on this issue.

### I.

We relate the factual background of this case briefly in order to place the legal issue we decide in context. On February 15, 1974, Edison and AGNS entered into a Contract for nuclear fuel recovery services. Nuclear fuel reprocessing involves the removal of uranium and plutonium from fuel assemblies which have been used in commercial nuclear power reactors. The recovered material was then to be recycled and fabricated into fresh fuel.

Under the Contract, AGNS agreed to reprocess spent nuclear fuel assemblies from certain of Edison's nuclear reactors during a defined period of time and to deliver recovered products back to Edison. At the time the Contract was executed, AGNS had not completed building its fuel reprocessing plant, and it had not been licensed to reprocess nuclear fuel by the Nuclear Regulatory Commission ("NRC"). The Contract also provided that under certain circumstances prior to AGNS's commencement of commercial operations, it was required to deliver to Edison uranium and plutonium equivalent to that which would have been recovered from Edison's nuclear fuel subject to reprocessing under the Contract. This uranium and plutonium is called "equivalent fissile material" of "EFM."

At some point after the Contract was executed, AGNS ceased work on its fuel reprocessing plant, and thereafter certain events occurred which resulted in the delay of government licensing of reprocessing plants. Some of these invents include the decision in *National Resources Defense Counsel v. NRC*, 539 F.2d 824 (2d Cir.1976)

(prohibiting NRC from acting on applications for commercial licenses prior to the NRC's final Generic Environmental Statement on Mixed Oxide Fuel ("GESMO") report), and the indefinite postponement of further GESMO hearings by the NRC's GESMO Hearing Board on April 12, 1977.

By letter dated July 27, 1977, Edison, pursuant to Section 16.1(b) of the Contract, requested that AGNS provide EFM based on certain fuel discharges. AGNS refused, asserting that the Contract had been voided by government action. This lawsuit was filed in 1979. On March 14, 1986, Edison filed an amended complaint. AGNS subsequently filed a motion to dismiss the amended complaint. AGNS argued that storage and waste-related costs could not be recovered under Count I because the Contract expressly allocated these costs to Edison. In her December 2, 1986 opinion, Judge Susan Getzendanner rejected this argument but unfortunately [1] indicated in dicta that AGNS might have had better luck if it had argued that the passage of title provision in Section 16 of the Contract was a critical price term. Understandably, AGNS jumped at this suggestion and filed the present motion for partial summary judgment.

### II.

Summary judgment is appropriate only where the moving party demonstrates that no genuine issue of material fact exists, and it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

At Judge Getzendanner's suggestion, AGNS argues that under Section 16, "Facility Contingency Plan," assuming this is an alternative performance obligation, the passage of title provision is a critical price

---

1. This dicta is "unfortunate" for two reasons: (a) Judge Getzendanner did not have the opportunity to review the parties' briefing on the issue before she made her prognostication, and (b) since she is no longer on the Court, we do not at this time have the benefit of her reasoning at the time the dicta was published.

term. The pertinent part of Section 16 provides the following:

> [If Edison has requested that recovered products be provided before the recovery plant is in operation] then [AGNS] shall deliver to destinations specified by Edison, in a timely manner, fissile material equivalent to that which would have been recovered from the fuel so made available in such quantities as the fuel would have yielded upon processing hereunder.... Title to equivalent fissile material delivered to Edison shall pass to Edison upon delivery. *Title to irradiated fuel which such equivalent material substitutes for shall pass to [AGNS] upon delivery of such equivalent fissile material.*

(Emphasis added). AGNS contends that as long as the title provision is a critical price term, it had no obligation to take title to the irradiated fuel because it never transferred title of the EFM to Edison. AGNS argues that "[l]ike a trade-in automobile, title to Edison's irradiated fuel was to pass to AGNS, along with a cash payment, as consideration for EFM." Thus, "because AGNS has not delivered EFM, it has never become entitled to receive an interest in Edison's discharged fuel and is not responsible for expenses incurred in storing and disposing of the fuel." (AGNS Memo in Support at 4, 6).

■ Edison contends that the title provision is not a critical price term but is part of the consideration for Edison's performance under the Contract. In the alternative, Edison contends that, even if the title could be construed to be a critical price term, AGNS would still be liable for the storage costs of the irradiated fuel as incidental damages under the Uniform Commercial Code ("UCC") for AGNS's wrongful refusal to accept title. Because we

agree with Edison, as set forth below, that AGNS would be liable for the storage costs of the irradiated fuel even under its price term theory, we deny AGNS's motion for partial summary judgment. Additionally, because we find that AGNS would be liable for the storage costs even under their price term theory, we need not address the issue of whether the title provision is a price term in the first place.

Under UCC § 2–304, "price can be payable in money or otherwise."[2] As consideration for the purchase of an automobile, for example, a payment of cash and the trade-in of a used automobile each constitutes a portion of the price. *Harney–Morgan Chevrolet Olds Co. v. Rabin*, 118 Ill. App.3d 602, 603, 74 Ill.Dec. 100, 103, 455 N.E.2d 130, 133 (3rd Dist.1983). Thus, AGNS argues that the irradiated fuel was merely a "trade-in" on the EFM. However, § 2–304 also provides that if the price "is payable in whole or in part in goods each party is a seller of the goods which he is to transfer." § 2–304(1). Accordingly, a "trade-in" is a "sale of the goods traded-in, and the buyer is a seller with respect to the traded-in items." 2 R. Anderson, *Uniform Commercial Code* § 2–304:10 (3d ed. 1982). Therefore, in determining the rights of the parties in this transaction, we are to treat Edison as a "seller" of the irradiated fuel and AGNS as the "buyer" of the irradiated fuel.

■ Edison contends that when the transfer of title provision is viewed as a price term, AGNS's refusal to accept title puts AGNS in the position of a breaching *buyer* and Edison in the position of an aggrieved *seller*. As an aggrieved seller, Edison contends that under § 2–709 it may recover the price (i.e. the EFM) as well as any incidental damages arising from AGNS's breach.[3] Edison contends that its

---

2. § 2–304. Price Payable in Money, Goods, Realty, or Otherwise

    (1) The price can be made payable in money or otherwise. If it is payable in whole or in part in goods each party is a seller of the goods which he is to transfer.

    (2) Even though all or part of the price is payable in an interest in realty the transfer of the goods and the seller's obligations with

reference to them are subject to this Article, but not the transfer of the interest in realty or the transferor's obligations in connection therewith.

3. § 2–709. Action for the Price

    (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

expenses incurred in storing the irradiated fuel are "incidental" damages. Under § 2–710, "[i]ncidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Incidental damages are normally incurred when a buyer or seller repudiates the contract or wrongfully rejects the goods, causing the other party to incur such expenses as costs for transportation, storing or reselling the goods. *Petroleo Brasileiro, S.A. v. Ameropan Oil Corp.,* 372 F.Supp. 503, 508 (E.D. N.Y.1974). *See also Neri v. Retail Marine Corp.,* 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311 (1972) (seller could recoup his "incidental" expenses such as for storage from the breaching buyer). *Accord Shokai Far East Ltd. v. Energy Conservation Systems, Inc.,* 628 F.Supp. 1462, 1467 (S.D.N.Y.1986); *Great Western Sugar Co. v. Mrs. Allison's Cookies,* 563 F.Supp. 430, 433 (E.D.Mo.1983), *aff'd in part* and *rev'd in part on other grounds,* 749 F.2d 516 (8th Cir.1984); *Proctor & Gamble Distributing Co. v. Lawrence American Field Warehouse Corp.,* 16 N.Y.2d 344, 266 N.Y. S.2d 785, 792–93, 213 N.E.2d 873, 878 (1965).

Although it truly boggles the mind to consider storage costs of 293 million dollars as "incidental," [4] we find that these costs are indeed costs incurred by AGNS's alleged breach to provide EFM and to take as partial payment of the "price," i.e. the irradiated fuel.

AGNS raises two arguments in opposition to Edison's claim that it is entitled to "incidental" damages for the storage costs of the irradiated fuel. First, it argues that because the title provision is a price term, it is not an obligation of AGNS and therefore it cannot form the basis of damages. Under this argument, AGNS principally relies on Judge Getzendanner's dicta to justify its position: "If [AGNS] is not entitled to title [because it did not give Edison EFM], it has no obligation to provide for storage and disposal." *Commonwealth Edison Co. v. Allied General Nuclear Services,* No. 79–2866 slip op. at 4 (N.D.Ill.Dec. 2, 1986) [available on WESTLAW, 1986 WL 13745]. As noted earlier in this opinion, Judge Getzendanner, however, did not have the benefit of adversarial arguments on this issue and did not consider the possibility that Edison as an aggrieved "seller" of the irradiated fuel after AGNS's breach would be entitled to incidental damages under UCC §§ 2–709, 2–710. AGNS cites no authority to support its position, and the language of the UCC is contrary to its position. Section 2–304 states that if price is payable in whole or part in goods, then each party is a "seller" of the goods which he is to transfer. Section 2–709 allows an aggrieved seller the right to recover the price and any incidental damages under § 2–710. In the context of this motion, AGNS does not dispute that it failed to tender the EFM which is the "price" for Edison's "sale" of irradiated fuel. Because AGNS would not "pay" for the irradiated

---

(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

(2) Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.

(3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (Section 2–610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for non-acceptance under the preceding section.

**4.** It also truly boggles the mind to consider what now appears to be a 293 million dollar liability as partial payment for the EFM. That, however, is AGNS's theory which we assume as correct for purposes of this motion.

fuel, Edison was forced to find storage for it. Because expenses incurred in the "care and custody of goods after the buyer's breach" are incidental expenses under § 2–710, we think it is reasonable to conclude that storage costs could be recovered by Edison from AGNS under this price term theory.

AGNS also argues that the storage costs are not recoverable as incidental damages because Section 17.4 of the Contract expressly excludes recovery of any consequential damages.[5] In support of the theory that incidental damages are nothing more than a subcategory of consequential damages, AGNS cites portions of a treatise on the UCC but does so out of context. It may well be that both incidental and consequential damages under the UCC "would be classified as consequential by the pre-Code law...." 4 R. Anderson, *Uniform Commercial Code* § 2–708:11 (3d ed. 1983). However, the Code itself clearly distinguishes between consequential and incidental damages. *See, e.g.,* § 2–715.[6] This distinction between incidental and consequential damages may have been new, but it is nonetheless valid.

The UCC distinction between incidental and consequential damages is also important because the UCC does not allow an aggrieved seller to recover consequential damages. 4 R. Anderson, *Uniform Commercial Code* § 2–710:3 (3d ed. 1983).[7] The UCC does, however, allow sellers to recover incidental damages. *See* §§ 2–709, 2–710. *Accord, Petroleo Brasileiro, S.A. v. Ameropan Oil Corp.,* 372 F.Supp. 503, 508 (E.D.N.Y.1974). If incidental damages were nothing more than a subcategory of consequential damages, then § 2–709 and § 2–710 would not exist. *Accord, McGinnis v. Wentworth Chevrolet Co.,* 57 Or. App. 443, 645 P.2d 543, 546 (1982), *rev'd in part on other grounds,* 295 Or. 494, 668 P.2d 365 (1983).

Finally, AGNS argues that Edison's position in the motion to dismiss, i.e. that the storage costs are "direct" damages and not consequential damages, is inconsistent with its position in this motion that the storage costs are "incidental." We disagree. The storage costs are direct when the title provision is viewed, as Edison claims, as consideration for Edison's performance under the Contract. It is only under AGNS's strained price term theory that the damages became incidental. This is because under the price term theory, the title provision is not a direct obligation of AGNS but only part of the "price" AGNS was to receive in exchange for the EFM. Accordingly, we do not find the positions irreconcilably inconsistent.[8]

---

5. Section 17.4(a) provides the following:
   4. *Liability Limit*
   (a) Except as otherwise provided herein [including specifically Section 7, Paragraph 2(d) ], neither party shall be liable to the other for any consequential damages, such as damages for loss of anticipated profits, liability to third parties, loss of revenue, losses by reason of Plant or Reactor shutdown, interest cost on irradiated fuel or Recovered Product(s), inventory or any other similar damages. Provisions of this clause shall apply, except as otherwise provided, to the extent permitted by law and regardless of fault.

6. § 2–715. Buyer's Incidental and Consequential Damages
   (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include
   (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
   (b) injury to person or property proximately resulting from any breach of warranty.

7. The UCC does not specifically say sellers may not recover consequential damages. However, the Code clearly does not specifically allow consequential damages to sellers, *compare* UCC § 2–710 *with* UCC § 2–715, and UCC § 1–106(1) provides that consequential damages may not be recovered "except as specifically provided in this Act or by other rule of law."

8. Our resolution of this motion in favor of Edison in no way reflects support for the price term theory as an alternative grounds of recovery for Edison. If Edison is to recover, its best route is via the direct obligation theory.

**1434**

In conclusion, we deny AGNS's motion for summary judgment because, even if we view the title provision as a price term, we find that Edison as an "aggrieved" seller of the irradiated fuel could be entitled to "incidental" damages for the cost of storing the fuel as a result of AGNS's alleged wrongful rejection of the goods. It is so ordered.