James F. Bangert, Plaintiff-Appellee, v. Emmco Insurance Company, and Associates Discount Corporation, Defendants-Appellants.

Gen. No. 9,863.

Opinion filed January 29, 1953. Released for publication February 26, 1953.

HEMPHILL & KELSEY, of Carlinville, for appellants.

D. A. McGRADY, of Carlinville, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

This is an appeal from a judgment for $1,500 entered by the court below on a jury verdict in a case brought

by plaintiff-appellee Bangert against defendants-appellants Emmco Insurance Company and Associates Discount Corporation. We shall refer to the parties Bangert, Emmco and Associates as plaintiff and defendants, respectively, hereinafter.

Plaintiff's amended complaint was for a declaratory judgment arising out of the purchase of an automobile on a conditional sales contract. After alleging the facts detailed below respecting the purchase of, and the subsequent damage to the vehicle in a collision, plaintiff alleged that defendants conspired to deny him his equitable interest in the car and the policy of insurance thereon by disposing of the car without his knowledge or consent, and prayed for a judgment declaring the rights and liabilities of the parties and further prayed for money damage.

Associates answered, admitting the purchase of the vehicle by plaintiff and the other main facts of the later transactions, but set up a conditional sales contract of which it alleged it was assignee, as a defense to plaintiff's action. Associates further counterclaimed for the unpaid balance due on the contract. Emmco's answer admitted the adjustment on the insurance policy with Associates and the other main facts of the transaction, but denied liability to plaintiff. No declaratory judgment was ever entered but judgment was entered on a jury verdict for money damages in the above sum and this appeal resulted.

The evidence may be briefly summarized. Bangert purchased a new Frazier automobile from Edwards Motor Sales, Inc. for $3,318 on April 2, 1948. He also bought collision insurance from Emmco with the named insureds on the policy being Associate Investment Company and its subsidiaries, of which Associates Discount is one, as their interest may appear. After Bangert's trade-in had been deducted and the

260

finance and insurance charges added, the balance due on the vehicle was $2,290.80, which was secured by a conditional sales contract. The balance on the contract was to be paid by Bangert in 24 payments. The same day Edwards assigned Bangert's contract with it to Associates, and thereafter Bangert made 11 payments to Associates, through March 1949.

On March 26, 1949 the car was greatly damaged in an accident, if not demolished. Bangert made no further payments and the unpaid balance on the contract as of the date of the accident and the time of trial was $1,244.10.

Bangert testified, over Associates objection, that the car had a fair cash market value of $2,600 in March 1949. The testimony of car dealers and repair men placed the fair cash market value of the car at from $1,200 to about $1,700, and the repair costs at $883.

On June 24, 1949 Associates repossessed the damaged vehicle, settled with Emmco for $856.50 on July 22, 1949, and received $118.86 from the sale of the salvage. Both of these sums were credited on Bangert's indebtedness with Associates.

Defendants' motions for directed verdicts at the close of all the evidence were denied, the jury rendered a verdict for plaintiff in the amount of $1,500, and found the plaintiff not guilty on Associates' counterclaim. The court denied the defendants' motions in arrest of judgment and for judgment n.o.v., or in the alternative for a new trial. Judgment was entered against both Emmco and Associates on both verdicts. From the judgment for plaintiff in the sum of $1,500 this appeal is taken. No appeal was taken from the judgment on the jury verdict as against Associates on the counterclaim, and we need not further consider that aspect of the case.

Plaintiff's position is that the defendants committed an actionable wrong towards the plaintiff in disposing

of the vehicle and settling the insurance claim without regard to, or remuneration for, the equity that the plaintiff had in the automobile or the insurance policy at the time of the collision that damaged the car, in that the defendants settled for the repair costs of the vehicle although the vehicle was in fact a total loss, and hence that the fair cash market value thereof should have been paid under the insurance policy.

The insurance policy issued by Emmco was a collision and comprehensive type of policy. By it Emmco agreed to pay for the loss of or damage to the automobile. Emmco's liability for loss was limited to the actual cash value of the automobile less a deductible of $50. The named insured on the policy was Associates Investment Company and its subsidiaries. The evidence showed that Associates Discount Corporation was such a subsidiary. The plaintiff Bangert was denominated in the insurance policy as "purchaser" and following his name and the name of the named insured the phrase "as their interests may appear" appeared on the policy admitted in evidence.

The conditional sales contract executed between Bangert and Edwards which was later assigned to Associates, provided:

"Title to said motor vehicle shall remain in said seller or his assignee until this contract is fully performed. The rights and obligations of the respective parties hereto are as set forth herein and in the 'Statement of Additional Covenants of the Buyer' . . . . , (which read, in part)

"Title to said motor vehicle shall remain in said seller or his assignee until this contract is fully performed by me . . . I agree, however, to deliver said motor vehicle to the owner of this contract upon his request and if the owner of this contract shall feel insecure or believe said motor vehicle will be lost to

him or damaged by reason of my continuing in possession thereof, the owner of this contract may take possession of said motor vehicle without notice or demand and with or without process of law, regardless of whether I am in default hereunder or not. But if I am not in default under this contract at the time the owner hereof comes into possession of said motor vehicle as herein provided and I shall pay all unpaid installments hereunder within ten days thereafter, the motor vehicle shall be delivered to me.

"Time is of the essence of this agreement and if I am in default in the payment of any sum due under this contract or fail to keep and perform any promises or agreements herein made by me, *all of my right to the possession of said motor vehicle and all of my interest therein shall thereupon terminate and the owner of this contract shall be the absolute owner thereof* and may take possession of said motor vehicle, either with or without demand or notice and by or without process of law and all sums paid hereunder shall be forfeited by me and retained for the use of said motor vehicle, and may sell said motor vehicle so taken at public or private use, with or without notice to me and with or without having same motor vehicle at the place and upon such terms and in such manner as the owner of said contract may determine. Said owner may bid at any such sale. From the proceeds of any such sale said owner shall deduct all expenses of taking, removing, holding, repairing and selling said motor vehicle, including its attorneys' fees and the expenses of liquidating any liens or claims thereon and *shall apply the balance of said proceeds to the amount unpaid hereunder* and any surplus shall be paid over to me; in case of a deficiency, I shall pay the same forthwith to said owner with interest and until such payment I authorize said owner to cancel any policy of insurance upon said motor vehicle. . . .

"The pronoun 'I' as used herein means the buyer. . . " (Italics supplied.)

We are thus confronted with an insurance policy which provided for insurance on the vehicle payable to Associates and Bangert as their interest might appear and a conditional sales contract which provided that title was retained in the seller or his assignee until the contract was fully performed by Bangert.

Insofar as repossession is concerned, the contract provided that if Bangert was in default all of his right to the possession of the vehicle and all of his interest therein should terminate and the owner of the contract should be the absolute owner thereof and might take possession of the vehicle. It was further provided that the owner might sell the motor vehicle so taken at public or private sale with or without notice to Bangert, and upon such terms and in such manner as the owner of the contract might determine, applying the proceeds to Bangert's debt, and paying over any surplus to Bangert.

■ It is undisputed that when Associates repossessed the vehicle in question, Bangert had made no payments for over 2 months prior to repossession. It is Bangert's position that he had no duty to continue with the payments when the car was demolished in the accident. In this contention, plaintiff is in error. There is no undertaking to make such payments in the policy of insurance by Emmco, whose contractual liability is limited to paying the loss to the vehicle.

■ Nor did the destruction of the vehicle relieve Bangert of his obligations to pay Associates under the conditional sales contract. Illinois has not adopted The Uniform Conditional Sales Act, but the relevant statute (chapter 121½, sec. [par.] 22, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 121.26]) which has been construed to apply in such cases to conditional sales, provides as follows:

264

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that—

"(a) Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery."

In *Weber Implement & Automobile Co. v. Leonard,* 224 Ill. App. 332, the automobile for which the defendant had given notes to the plaintiff was destroyed by fire without fault on the part of the defendant. Plaintiffs sued on the notes and the trial court rendered a judgment substantially less than the face value of the notes, which on appeal was reversed. The court cited section 22 of the Sales Act which is quoted above in this opinion and concluded that under the statutes above quoted and by common law, the maker of a promissory note given to the vendor of a chattel who retains title thereto merely for the purpose of securing payment of the note will be held liable on the note where it appears the chattel was destroyed by fire before payment on the note was due. We conclude that the destruction of the automobile in question in this case did not operate to relieve the plaintiff Bangert of his obligations to pay the sums due on the conditional sales contract to Associates, as and when they became payable.

Bangert failed to continue his payments under the mistaken notion that it was Emmco's duty to make the payments in his stead. Emmco had no such duty under its contract of insurance as noted above. Thus when the automobile was repossessed on June 24, 1949, Bangert was in default. The question now becomes what, if any, Bangert's rights were subsequent to that time.

██ Repossession was in accordance with the terms of the contract, Bangert being in default. The right of a conditional vendor to take back the property on breach where no rights of third parties are involved is upheld by many decisions in this State, and was clearly provided for by the contract in question. *Jones v. Greenspon's Son Pipe Corp.*, 381 Ill. 615, 620.

██ Upon repossession, Associate's rights in the vehicle became absolute, and it had no duty to place Bangert in status quo. Thus, in *Frazier v. Allison*, 315 Ill. App. 253, plaintiff, a conditional seller, sued in replevin to recover a tractor. The defendant, among other defenses, asserted that because the plaintiff kept the trade-in tractor received from the defendant when it delivered the unit sought to be replevied from the defendant could not bring replevin until they had returned the trade-in unit. The court stated on pages 258 and 259:

"In matters of conditional sale the law seems to be that if the condition of payment is not fully complied with or waived, the original vendor's rights become perfect and absolute and he may follow the property or recover its full value and without any deductions for any partial payments made by the vendee, they are all forfeited, 55 C. J. 1279. *Herbert v. Rhodes-Burford Furniture Co.*, 106 Ill. App. 583. There is no recission of the contract, requiring the vendor to place the vendee in status quo, but the taking is but in accordance with the contract and the vendor is not liable to refund payments made to him. *Latham v. Sumner*, 89 Ill. 233."

██ Yet that a conditional seller need not place a defaulting buyer in status quo does not mean, in view of the sales contract here involved, that the seller has no duty to make a settlement that is other than bona fide with the insurance carrier. Certainly Associates'

contractual undertaking to pay any surplus resulting from a resale to Bangert did not entitle Associates to negligently or deliberately minimize the insurance recovery and leave Bangert without remedy.

In the analogous problem of resale after repossession, some jurisdictions have enacted legislative definitions of the correlative duties and rights of both parties. *See:* N. Y. Consolidated Laws, C. 41, Personal Property Law, secs. 79, 80 (a)–(e); Throckmorton's Ohio Code Ann., sec. 8570. Illinois has no such statute.

■ In other jurisdictions where the question has arisen in the absence of statute the broad principle has been established that a conditional seller has a duty to exercise ordinary care to sell a repossessed vehicle for its fair market value under the facts and circumstances then existing, and to account to the buyer for any difference between the unpaid balance on the contract and that value. *Motor Contract Co. v. Johnson,* 61 Ga. App. 735, 7 S. E. (2d) 320; *General Motors Acceptance Corp. v. Dickinson,* 249 Ky. 422, 60 S. W. (2d) 967.

■■ In the case at bar the evidence is not clear as to whether the vehicle was totally demolished or was repairable. Since the appeal comes to us on the denial of the motion for judgment notwithstanding the verdict, we must assume that the vehicle was totally demolished as that is the most favorable inference that can be drawn from the evidence in favor of the plaintiff. From the evidence summarized above the jury could have found that Associates wrongfully settled the insurance claim with Emmco for the cost of repairs of a totally demolished car so as to deny Bangert the difference between the amount Bangert owed on the contract and the fair cash market value of the car to which sum he is entitled as damages.

■ As to Emmco, however, there is no evidence of any actionable wrong to Bangert. At the time Emmco

settled with Associates, Associates was the absolute owner of the vehicle, subject to its contract with Bangert. Emmco had no such contractual obligations but was entitled to adjust the loss for such price as it could obtain, inasmuch as all of Bangert's interest in the car as to Emmco had been cut off by the default and repossession. There was no evidence of wrongful combination or concert between Associates and Emmco to justify submitting Emmco's liability to the jury. One witness stated that Emmco and Associates had a common majority stockholder, but that he knew nothing of the composition of the board of directors of the two corporations. This evidence was far from sufficient to prove conspiracy on the part of the two defendants. The court should have entered judgment notwithstanding the verdict for Emmco. The judgment against it must be reversed.

The judgment against Associates must be reversed and the cause remanded for a new trial as the amount of the jury verdict is entirely unwarranted by any competent evidence. The plaintiff did not qualify as an expert witness on the value of his own car. His opinion testimony as to the fair cash market value of the car which was almost $1,000 higher than the figure of any qualified witness, must have misled the jury, and was erroneously admitted over the objection of the defendant Associates.

The plaintiff was a farmer and testified that he knew of the fair cash market value of the vehicle by reason of reading newspaper advertisements and automobile trade publications. He had bought and sold several cars since 1937 for his personal use. Plaintiff had never dealt in cars on the open market; what knowledge he gained from his reading was nothing more than the opinions of others as to what the values were or ought to be, and not necessarily what the value was in the market. The decisions in Illinois allowing

an owner to give opinion testimony as to the value of his own personal property are limited to personal articles, household goods and the like, which have a peculiar value to the owner by reason of their very nature. *Sinamaker v. Rose,* 62 Ill. App. 118; *Hebard v. Riegel,* 67 Ill. App. 584; *Brenton v. Sloan's United Storage & Van Co.,* 315 Ill. App. 278. The cause must accordingly be remanded for a new trial as to Associates.

For the reasons above set forth, the judgment is reversed as to the defendant-appellant, Emmco Insurance Company, and is reversed and remanded as to the defendant-appellant, Associates Discount Corporation, for further proceedings not inconsistent with this opinion.

*Reversed as to defendant-appellant, Emmco Insurance Company.*

*Reversed and remanded, with directions, as to defendant-appellant, Associates Discount Corporation.*