HARNEY-MORGAN CHEVROLET OLDS COMPANY, Plaintiff-Appellee and Cross-Appellant, *v.* KENNETH RABIN *et al.*, Defendants-Appellants and Cross-Appellees.

Third District   No. 82—651

Opinion filed September 23, 1983.—Rehearing denied November 8, 1983.

James L. Frazin and Dinesh M. Lakhani, both of Frazin & Colombik, of Palatine, for appellants.

Dwight L. Shoemaker, of Conway & Shoemaker, of Aledo, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This lawsuit began on April 7, 1981, when the plaintiff, Harney-Morgan Chevrolet Olds Company, filed a complaint to replevy a 1981 Oldsmobile from the defendants, Kenneth Rabin and his wife, Gertrude Rabin. When the property in question was not delivered up pursuant to a writ of replevin, the plaintiff amended its complaint seeking damages for the value of the 1981 Oldsmobile. After a hearing on the merits of plaintiff's complaint in the circuit court of Mercer County, a judgment for the plaintiff in the sum of $13,510.57 plus attorney fees and costs was entered. The same court denied plaintiff any recovery based upon allegations of fraud. The defendants have appealed the decision of the circuit court, and the plaintiff has cross-appealed.

Kenneth Rabin, a resident of Morton Grove, Illinois, was a traveling furniture salesman. On March 19 or 20, 1981, while calling on a customer in Aledo, Illinois, Mr. Rabin mentioned that he was interested in purchasing a new car. Mr. Rabin's customer offered to phone the local Chevrolet-Oldsmobile dealer, Lawrence Morgan, as an introduction to doing business.

Following the phone call, Mr. Rabin went to the dealership in Aledo where he was met by Mr. Morgan. Mr. Morgan was shortly thereafter forced to leave, but not before introducing Mr. Rabin to a salesman, Mr. Olson. At the same time, Mr. Morgan gave Mr. Olson a note that read: "Kenny Rabin had a 1978 Cadillac and was interested in an Oldsmobile."

Mr. Rabin looked at a new Oldsmobile, and Mr. Olson inspected and test-drove the Cadillac which Mr. Rabin was driving that day and which was to be the subject of the trade-in. Mr. Olson offered a deal to sell the Oldsmobile to Mr. Rabin for the Cadillac and cash. After approximately one hour, Mr. Rabin left the Aledo dealership and returned to his home in Morton Grove. Thereafter, Mr. Rabin compared

the offer he had received from the plaintiff dealership with trade-in deals he could make at automobile dealerships near his home. Discovering that the best price for a new car had been offered by the plaintiff dealership, Mr. Rabin phoned Harney-Morgan Chevrolet Olds Company to accept the offer.

Mr. Rabin returned to Aledo with his wife a day or two later. There he signed a retail buyer's order setting forth the terms of the agreement, including a term which provided for the trade-in of a 1978 Cadillac. He also signed an odometer certificate representing the mileage stated on the odometer, 52,470 miles was correct. Finally, Mr. Rabin signed instruments of title turning the Cadillac over to the dealership as a trade-in. However, the Cadillac was not a 1978 model, but rather a 1976 model. The model year was correctly reflected on the instrument of title assigned to the dealership. Nevertheless, it would appear that during the entire negotiation process, the automobile dealer and his agents mistakenly concluded that the Cadillac was a 1978 model. There is no allegation that Mr. Rabin intentionally misrepresented the model year of the car he was trading in, and indeed the salesmen had ample opportunity to inspect and test drive the Cadillac which they mistook as a 1978 model.

Two days after the sale was consummated and Mr. and Mrs. Rabin drove away in their new Oldsmobile, the Aledo dealer discovered that the Cadillac was a 1976 model. Immediately the dealer demanded that Mr. Rabin return the Oldsmobile and rescind the sale. Mr. Rabin refused. Suit was filed by the dealership in the circuit court of Mercer County. On April 7, 1981, that court filed a temporary order restraining the defendants, Kenneth and Gertrude Rabin, from driving or using the new Oldsmobile. Thirteen days later the same court concluded that the plaintiff dealership had made a *prima facie* showing of its entitlement to possession of the Oldsmobile, and ordered the issuance of a writ of replevin restoring possession of the new Oldsmobile to the plaintiff. The defendants failed to comply with either the temporary order or with the writ of replevin.

When the Oldsmobile was not delivered up pursuant to court order, the plaintiff dealership filed additional counts to its complaint seeking damages for conversion, misrepresentation and fraud. Still, Mr. Rabin continued his possession and use of the new Oldsmobile. The matter proceeded to trial and the court found for the plaintiff, awarding damages on both the conversion theory and the misrepresentation theory, but deciding that no fraud occurred in the transaction.

The defendants, Mr. and Mrs. Rabin, have appealed, asserting

that a valid contract was entered into for the trade-in of the Cadillac which Mr. Olson inspected and test-drove, and that no legal basis for rescinding that contract has been demonstrated. The plaintiff dealership has appealed, urging that the circuit court should have found in its favor on the fraud theory alleged in its complaint.

■ The provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 1—101 *et seq.*) apply to the transaction in question. That code provides that in contracts governed by its rules,

"(1) The price can be made payable in money or otherwise. If it is payable in whole or in part in goods each party is a seller of the goods which he is to transfer." (Ill. Rev. Stat. 1981, ch. 26, par. 2—304(1).)

Thus, with the transaction in question, the plaintiff dealership was a seller of a new Oldsmobile, and the defendants were sellers of the 1976 Cadillac. It follows then that the plaintiff dealership, in attempting to set aside this transaction, would have the remedies granted to a party in the position of a buyer. Since the dealership had, in the terminology of the Code, "accepted" the Cadillac, its statutory remedies would be limited to revoking its acceptance. (Ill. Rev. Stat. 1981, ch. 26, par. 2—608.) In addition, the dealership buyer would have certain remedies existing at common law and not supplemented by the Code. Ill. Rev. Stat. 1981, ch. 26, par. 1—103.

■ In the court below, the plaintiff relied on two of these common law theories to support its position that the contract never existed. First, the dealership urges that it was mistaken as to the vintage of the Cadillac trade-in. Secondly, it urges that the defendants misrepresented the actual mileage which the Cadillac had been driven. Generally, the unilateral mistake of one party to a contract may not be relied upon to relieve that party from the obligations of the contract where the party's own negligence and lack of prudence resulted in the mistake. (*Diedrich v. Northern Illinois Publishing Co.* (1976), 39 Ill. App. 3d 851, 350 N.E.2d 857.) Here, the dealership had an opportunity to inspect and test-drive the 1976 Cadillac before entering into the agreement. It would not be inequitable to charge the dealership with superior knowledge concerning the values, styles, and appearances of used automobiles. That superior knowledge should have enabled the prudent and diligent dealer to correctly appraise the car and to correctly determine its model year. If the plaintiff here failed to exercise that diligence and prudence in inspecting the goods which were to be the subject of the bargain, it would not be inconsistent with established contract law to deny relief based upon a theory of unilateral mistake. However, in this case the dealer's otherwise inex-

cusable mistake was induced, at least in part, by the actions of the defendants. Mr. and Mrs. Rabin signed the retail buyers' order, which called for the trade-in of a 1978 Cadillac, when in fact they knew that their automobile was a 1976 Cadillac. This written misrepresentation was negligently accomplished, the defendants never taking time to read the document they were signing. To negligently sign an unread document does not relieve the signer of the legal consequences of the document's contents. (*Flannery v. Flannery* (1943), 320 Ill. App. 421, 51 N.E.2d 349.) Yet, this retail buyer's order was prepared by the plaintiff and the defendants urged that they relied on the plaintiff to accurately memorialize their agreement. Defendants further assert that such reliance was reasonable.

■ A more serious misrepresentation by the defendants, more serious because it is not excused by reliance on the actions of the plaintiff, is the certification of the odometer reading of the trade-in Cadillac. According to the findings of the circuit court, it appears from the evidence that the actual miles the Cadillac had been driven far exceeded the 52,470 miles that were represented in the certificate of the defendants. This discrepancy came to light from an examination of the mileage deductions claimed on the Federal tax returns filed by the defendants, and was unexplained by the defendants in their testimony at trial. Although the circuit court relied on the plaintiff's unilateral mistake concerning the model year in concluding that there was no meeting of the minds and no contract, we must affirm the decision of the lower court upon any theory properly preserved for our review. We believe the inaccuracies in the odometer certificate constituted misrepresentation of sufficient materiality to rescind the contract. Hence, we conclude that the plaintiff was entitled to possession and ownership of the new Oldsmobile upon return to the defendants of the 1976 Cadillac.

■ ■ It was just such an action for possession that the plaintiff filed. The circuit court, determining that the plaintiff had made the requisite showing of a *prima facie* case, issued a writ of replevin. It appears from the record that there were irregularities in the service of that writ. Nevertheless, the defendants had been duly served with summons and were before the court. Such an appearance before the court by the defendants and their attorney was sufficient to waive any defects in the service of the writ. (*O'Brien v. Haynes* (1871), 61 Ill. 494.) The defendants were, therefore, bound by the terms of the writ and obligated to deliver up possession of the Oldsmobile. Where, in a possessory action for replevin, the property is not delivered up in compliance with a writ, the plaintiff has the alternative remedy which

was formerly identified as an action of trover. (*S. T. Enterprises, Inc. v. Brunswick Corp.* (1974), 57 Ill. 2d 461, 315 N.E.2d 1.) The measure of damages in the trover action is the market value of the property at the time of conversion. It follows then that the plaintiff correctly amended its complaint to seek money damages when the writ of replevin failed to result in a repossession of the property. It also follows that the circuit court's award of damages in the amount of $13,510.57 was correct.

■ The defendants urge for the first time on this appeal that they were denied an opportunity in the circuit court to prove damages under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) and under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*). Neither of these statutory causes of action were pleaded in the defendant's answer as is required by the Supreme Court Rules. (87 Ill. 2d R. 133(a).) Consequently, we cannot consider as a matter of first impression whether these causes of action will lie.

■ Finally, the defendants urge that the circuit court erred in awarding attorney fees to the plaintiff dealership. We know of no authority for awarding attorney fees under these facts. The plaintiff characterizes the award of attorney fees as a judgment for punitive damages, a form of relief that it prayed for in its complaint. While it is true that courts may consider attorney fees as one element in awarding punitive damages, these two elements of recompense are separate and distinct. To sustain an award of attorney fees as an item of exemplary damages, the intent of the trial court to do so must be clearly established by the record. (*Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 381 N.E.2d 821.) As we find no indication in the record that the circuit court intended this award of attorney fees to serve as punitive damages, the award cannot be sustained.

■ The issues raised by the plaintiff's cross-appeal concern the circuit court's failure to enter a judgment for the plaintiff finding the defendants guilty of fraud. First it is urged that the allegations of fraudulent conduct as set forth in its affirmative defenses to defendants' counterclaim were in fact admitted by the defendants when they failed to reply to those affirmative defenses. The defendants did file a motion to strike plaintiff's affirmative defenses, and the circuit court ordered that motion to be taken and decided with the merits of the case. The defendants and the circuit court both understood that order as obviating the need for a reply to the affirmative defenses. Regardless of whether that understanding was correct, it would now be inequitable in light of that understanding to order that the allegations in

the affirmative defenses were deemed to be admitted. Plaintiff also urges that fraud was proved in the discovery process by reason of the defendants' failure to produce certain business mileage records which they admittedly maintained. Undeniably, the defendants were less than forthright in the discovery process. Whether their obfuscation was the result of mere complacency, or in the alternative of egregious malice, is essentially a question of fact. The circuit court weighed those facts and determined that no fraud was present, and it would be inappropriate for us to overturn that decision. For whatever reason the defendants lacked forthrightness, discovery sanctions may be appropriate, and a motion for such sanctions is still pending in the court below. The circuit court did not err in failing to find fraud in the defendants' actions.

For the reasons herein set forth, and in reliance on the authorities cited, we affirm the decision of the circuit court of Mercer County, with the exception of its award of attorney fees, which cannot be sustained. Further, we remand the cause to the circuit court of Mercer County for a determination on the pending motion.

Affirmed in part; reversed in part; remanded.

ALLOY and BARRY, JJ., concur.