NANCY BUECHIN, Plaintiff-Appellant, v. OGDEN CHRYSLER-PLYMOUTH, INC., Defendant-Appellee.

Second District No. 2—86—0729

■■■■■

Opinion filed August 3, 1987.

238

Nancy A. McKeating, of Rooks, Pitts & Poust, of Wheaton (Kevin F. Lynch, of counsel), for appellant.

Thomas K. Prindable & Associates, of Batavia (Thomas K. Prindable, of counsel), for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Nancy Buechin (Buechin), appeals from a judgment entered by the circuit court of Du Page County granting the motion of defendant, Ogden Chrysler-Plymouth (Ogden), for a directed finding pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110). The issues raised on appeal are: (1) whether the trial court erred in granting defendant's motion; and (2) whether the trial court erred in refusing to allow plaintiff's expert witness to testify regarding certain economic matters raised by the case. We affirm in part, reverse in part and remand.

Plaintiff filed a four-count complaint. In count I, plaintiff alleged defendant committed common law fraud. Count II alleged that defendant's conduct was violative of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBPA) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.). In count III, plaintiff alleged that defendant violated the Motor Vehicle Information and Cost Savings Act (15 U.S.C. secs. 1981 through 1991 (1982)). Count IV alleged that defendant violated the provisions of section 3—112.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1). At the end of the trial, the court granted plaintiff's motion to file an amendment to her first amended complaint pursuant to sections 2—616(a) and (c) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—616(a), (c)) to allow the pleadings to conform with the evidence presented at trial.

Buechin testified that on the evening of February 25, 1984, she talked to Tom Komes (Komes), a salesman for Ogden, regarding her desire to purchase a new car. During her testimony Buechin was asked what she understood a new car to be. She answered that "a

new car is a car that has not been owned by anybody else, taken off the lot and in their possession."

Buechin explained to Komes the type of car she wanted and specified the options and the price range she was prepared to pay. Komes took her to the lot and showed her a Plymouth Turismo 2.2. Komes took her for a test drive around the lot for approximately a minute or two. She testified that she noticed the exterior and the color of the car and that the car had only an AM radio (she was interested in an AM/FM radio). The only instrument on the dashboard Buechin testified to have noticed was the tachometer, which she observed "when she shifted." She said she did not notice any other instrumentation because she did not "really look" in that direction. Buechin expressed reservations regarding the car when she and Komes returned to his office after inspecting the Turismo. After allaying her concerns, Komes prepared for Buechin's signature a worksheet giving a description of the car and the options with prices. Buechin testified that on the evening she bought the Turismo, the space providing for mileage information on the worksheet was left blank.

Following the completion of the worksheet, Buechin testified that she was directed to see Charles Cycholl (Cycholl), Ogden's business manager. Buechin was asked to sign various forms and papers, including a buyer's order sheet and an odometer statement form. She questioned the accuracy of the odometer statement, which indicated that the Turismo had 10 miles on it, in view of the fact that she had not personally observed the odometer while she was inspecting the car. Buechin testified that Komes, who came after her to Cycholl's office, indicated to her that the car had 10 miles on it "give or take a few" and encouraged her to sign the odometer statement. Cycholl signed the statement on behalf of the dealership.

After Buechin completed signing all the forms, she left the dealership in the Turismo. While driving she noticed that the odometer registered 650 miles. Buechin was not able to return to the dealership that night because it was closed, so she returned the following day, February 16, 1984, to talk to Komes about the mileage. He offered to extend the warranty on the car by 700 miles, which was the current mileage on the Turismo on that day. Buechin testified that at that time Komes filled in the blank mileage space on the worksheet.

Buechin returned to Ogden the following day to have the AM/FM radio and the air conditioner installed and have some adjustments performed on the car. During the next few days, Buechin secured financing for the car, and on March 1, 1984, she tendered a certified check for $9,914.13 as full payment for the Turismo.

Ten days later, on March 10, 1984, Buechin returned to Ogden with her father to talk to Komes regarding the mileage. The two of them expressed concern that a car with that many miles on it was not new. Also, Buechin testified that she had found a buyer's order sheet in the glove compartment issued to another customer, Geri Heintz (Heintz), and that she confronted Komes with this information. Defendant objected to the introduction into evidence of this document in the form of a motion *in limine* which the trial court denied.

Buechin testified that when she confronted Komes with the Heintz buyer's order for the Turismo, Komes "shrugged" his shoulders. Komes referred Buechin and her father to Rick Evans (Evans), the new car manager. When Buechin expressed her desire to get a new car, Evans informed her that he could not do that since the car "was getting titled" to Buechin, and, therefore, "there was no possible way" she could get a new car. Evans offered to Scotchguard the interior of Buechin's car instead, which offer she refused.

Plaintiff called Komes as an adverse witness pursuant to section 2—1102 (Ill. Rev. Stat. 1985, ch 110, par. 2—1102). Komes testified that on the evening of February 25, 1984, he did not tell Buechin that there were 650 miles on the Turismo when, in fact, he had seen the mileage during the test drive. Komes did say, however, that he mentioned to Buechin that "there were some miles on the car." He also testified, contrary to Buechin's testimony, that he did fill in the mileage on the worksheet the same evening Buechin purchased the Turismo. Komes acknowledged that he did not recall whether he discussed the worksheet information and, specifically, the mileage with Buechin, and that he did not know whether, in fact, she had seen this figure on the worksheet. Komes contradicted Buechin's testimony regarding his presence during the meeting between Buechin and Cycholl and asserted that he did not advise her to sign the odometer statement as a routine matter.

Komas further testified that on the evening of February 25, 1984, no one advised Buechin that the Turismo had been in the possession of somebody else for a few weeks. Komes further stated that he first became aware that the Turismo had been in the possession of somebody else from Buechin, the day after she took possession of the Turismo. He said that Buechin called him at home and told him that there were 650 miles on the car. She also informed Komes that "she had found in the glove compartment of the car paperwork showing that it had been sold or *** attempted [to be sold] to someone else." He also testified that he did not discuss the sale of the Turismo to Heintz with anyone from Ogden either before or after the transaction

with Buechin and that he had no knowledge of that deal until Buechin alerted him to it.

Cycholl testified that he prepared the odometer statement for Buechin. He stated that the statement was generated automatically by computer and that he did not verify the accuracy of the computer printout by personally examining the odometer on the car.

Evans was called as an adverse witness pursuant to section 2—1102 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). Evans was the new car manager at the time the transaction in question here took place. His testimony directly contradicted Komes' testimony regarding whether Buechin was informed and aware of the 650 miles on the car. He testified that on the evening of February 25, 1984, Buechin was aware of the 650 miles on the car and expressed concern over this fact. He reassured her that despite the mileage, the Turismo was a new car.

Evans also testified that on the evening Buechin picked up her car, he knew that the Turismo had been in the possession of someone else but that he did not remember communicating this information to either Komes or Buechin. When asked how he defined a buyer's order, the type of document Buechin signed the evening of February 25, 1984, Evans answered that it was "a binding contract" between the buyer and the dealership.

Since the paperwork regarding the Heintz transaction was not contained either in the "deal bag" or anywhere else, Evans was asked whether this situation was consistent with the "ordinary and customary practice of Ogden" to retain such paperwork in dead-deal files. Evans answered in the negative.

James Parota (Parota) was also called as an adverse witness. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). He is the general manager of Ogden. Parota testified that the value of a car is not diminished simply by the possession of someone other than the dealership as long as ownership had not been transferred to someone else. He also testified as follows regarding the repurchase price of the car that has been transferred to a customer:

"[Plaintiff's counsel]:

Q. If you sold a new Plymouth Turismo 2.2 to a prospective purchaser and the customary papers were signed, the keys were transferred, and the purchaser took the vehicle off the lot and then a couple of weeks later they wanted to sell it back to you at the dealership, would you pay them full purchase price that they had paid to you for that vehicle?

\* \* \*

A. No, I would not give full purchase price."
Parota also indicated that at the time the car was sold to Buechin, he was not aware that the Turismo had been transferred to Heintz for a few weeks and then returned to the lot. He did, however, state that such a return to "new car inventory" did not constitute an unusual occurrence which would warrant that the car be specially "flagged" and, as such, "there was not [sic] reason to specifically know anything about the car." Parota stated that he did not recall or know whether anyone informed Buechin that the car had been in the possession of another purchaser and that no one told him that she was so informed. Parota also testified that even though the Turismo odometer statement certified that the car had 10 miles on it, which fact was incorrect, he was under the impression that Buechin had been informed of the true odometer reading of 650 miles. Parota stated that it was his understanding that both Komes and Evans had told Buechin, the evening she purchased the car, that the Turismo had 650 miles on it.

At the close of plaintiff's case, defendant filed a motion for a directed judgment pursuant to section 2—1110 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110). The basis for defendant's motion was that the "plaintiff's knowledge that the automobile's mileage was [650] miles at the time of its delivery to her precludes [her] from relying upon any contrary statements allegedly made to her by Ogden." Defendant argued that Buechin paid for the car after having complete knowledge of the mileage, and, thus, "her actions belie her allegations." The trial court granted defendant's motion. This appeal ensued.

The first issue raised by plaintiff on appeal is that the trial court erred in granting defendant's motion as to all issues raised at trial. We discuss first the standard we will employ to review the correctness of the court's ruling, and then we will examine whether the grant of the motion was proper as to each issue raised by plaintiff.

Defendant argues that plaintiff in her brief has urged us to apply the wrong standard to review the trial court's grant of defendant's motions for a directed finding. We agree.

Plaintiff contends that this case is to be analyzed according to the principles set out in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. We agree with defendant that the criteria established in that case regarding the grant of a directed verdict are not applicable to cases tried without a jury. In nonjury cases the appropriate standard is to be found in section 2—1110 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110), which provides in pertinent part:

"In all cases tried without a jury, defendant may, at the close of

plaintiff's case, move for a finding or judgment in his or her favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110.) The standards mandated by this statute have been judicially interpreted to be distinguishable from those applicable in jury cases. The proposition that a directed verdict should be granted only in cases in which all evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand does not apply in a nonjury case. (*Geiger v. Zikic* (1980), 81 Ill. App. 3d 1016, 401 N.E.2d 1260.) When ruling on a defendant's motion for judgment at the close of plaintiff's case in a nonjury case, the trial court must consider the weight and quality of the evidence, including any favorable to the defendant, pass on the credibility of witnesses, and review reasonable inferences from the testimony presented. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) As such, the trial court must apply a two-step analysis, first determining as a matter of law if plaintiff has presented a *prima facie* case, *i.e.*, whether plaintiff offered some evidence on each element of her cause of action; if not, judgment should be entered for defendant; if, however, plaintiff has made out a *prima facie* case, the trial court must then weigh the evidence and if, after having done so, sufficient evidence still remains to establish plaintiff's *prima facie* case, the court should deny defendant's motion and proceed with the trial. (*People ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 577-78, 475 N.E.2d 1024.) The decision of the trial court granting defendant's motion for a directed finding should not be reversed on review unless it is contrary to the manifest weight of the evidence. *Proctor v. Handke* (1983), 116 Ill. App. 3d 742, 748, 452 N.E.2d 742.

Although we agree with defendant that plaintiff wrongly argued that we should follow the *Pedrick* standards in this case, we are not persuaded by defendant's argument that pursuant to Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), plaintiff's failure to argue the proper statutory criteria constituted waiver of plaintiff's arguments regarding the specific substantive issues raised in the case. We find that plaintiff has raised the issue that the trial court erred in granting defendant's motion sufficiently to preserve the various substantive issues for review. We will, thus, examine these issues consistent with judicial interpretations of section 2—1110 (Ill. Rev. Stat. 1985, ch.

110, par. 2—1110).

 ■■ ■ The first contention we address is whether the trial court's granting of defendant's motion for a directed finding on the issue of whether defendant committed common law fraud was against the manifest weight of the evidence. In Illinois to prevail in a cause of action for fraud, a plaintiff must prove: (1) that the defendant made a statement; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (5) that was relied upon by the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) such that the victim's reliance led to his injury. (*Parson v. Winter* (1986), 142 Ill. App. 3d 354, 359, 491 N.E.2d 1236.) We find that plaintiff has satisfied these elements and, therefore, has established a *prima facie* case of fraudulent misrepresentation. Defendant acknowledged that it represented to Buechin that the Turismo was a "new" car and did not disclose to her that the car had been in the possession of somebody else for a few weeks, while that individual drove the car in excess of 600 miles. The court in *Maxcy v. Frontier Ford, Inc.* (1975), 29 Ill. App. 3d 867, 331 N.E.2d 858, held that if a car has been previously sold, then recovered and sold as a new car, the seller has the duty to so advise the purchaser, and failure to do so is a misrepresentation of a material fact. 29 Ill. App. 3d 867, 871, 331 N.E.2d 858.

 ■■■ Defendant claims that failure to inform Buechin of the previous owner was "an innocent oversight." We conclude that, under the principles enunciated in *Maxcy* and in the case law analyzing what constitutes common law fraud, Ogden intended to deceive Buechin. As the court in *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267, noted, a party is considered to intend the necessary consequences of his own acts. (102 Ill. App. 3d 483, 491, 429 N.E.2d 1267.) Accordingly, one who knowingly makes a false statement to another who relies thereon is guilty of fraud regardless of the defendant's motive, and the plaintiff is not required to prove an express fraudulent intent. (102 Ill. App. 3d 483, 491, 429 N.E.2d 1267.) Where representations which are, in fact, false are made in reckless disregard of their truth or falsity an action for fraud does exist. (*Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 909, 299 N.E.2d 387.) Similarly, statements made in culpable ignorance of their truth or falsity are fraudulent. (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 491, 429 N.E.2d 1267.) Furthermore, a statement, although technically true, may nevertheless be fraudulent where it omits qualifying materials, for a half-truth is sometimes more mislead-

ing than an outright lie. *Kurti v. Fox Valley Radiologists, Ltd.* (1984), 124 Ill. App. 3d 933, 938, 464 N.E.2d 1219.

 ██ Defendant contends that Buechin had no right to rely on the odometer statement, because she had an opportunity to observe the odometer herself and, specifically, because prior to her paying for the car, she had full knowledge that there were 650 miles on the car. In our analysis of whether fraud had been committed, we do not focus on the number of miles on the car, but on whether Buechin got a "new" car as she and the general public understand the ordinary meaning of that word, that is, a car which has not been previously owned. (See *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540 (where the court stated that the key elements of ownership are control and the right to enjoy the benefits of the property).) Specifically, we analyze this case in light of *Maxcy* to ascertain whether Ogden fulfilled its duty of informing plaintiff of the prior ownership of the Turismo. Our examination of the record reveals that Buechin was not informed of the previous ownership before she signed the buyer's order on the evening of February 25, 1984. Therefore, we find that defendant has not discharged its duty to inform as delineated by *Maxcy*. (*Maxcy v. Frontier Ford, Inc.* (1975), 29 Ill. App. 3d 867, 871, 331 N.E.2d 858.) The issue of plaintiff's awareness is a question of fact to be resolved by the trial court, and the result will not be overturned on review unless it is against the manifest weight of the evidence. (*Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 68, 415 N.E.2d 668.) We conclude that here the trial court's finding that Buechin was not defrauded when she was sold the Turismo without being informed of the prior sale by Ogden was against the manifest weight of the evidence.

 ██ Concealment is actionable where employed as a device to mislead. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 197, 380 N.E.2d 1040.) In order to be material, the concealed fact must be such that had the other party been aware of it, he would have acted differently. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 197, 380 N.E.2d 1040.) Buechin's testimony establishes that her knowledge of the previous ownership would have made a difference in her decision to buy the Turismo.

We reverse the trial court's order granting defendant's motion for judgment at the end of plaintiff's case on the issue of fraud and remand for further proceedings.

The next contention raised by plaintiff is that the trial court erred in granting defendant's motion with respect to Ogden's violation of the ICFDBPA (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). We

agree.

Section 2 of the ICFDBPA provides in pertinent part:

"[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.)

This statute has received considerable judicial interpretation. (See *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815.) These cases and others stand generally for the proposition that the ICFDBPA has created a new cause of action different from the traditional common law tort of fraud.

The majority of the traditional common law elements have been virtually eliminated by the ICFDBPA. In *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040, an action for recovery under both common law fraud and the ICFDBPA, the court held: "The Act affords *** broader consumer protection than does the common law action of fraud since the Act also prohibits any 'deception' or 'false promise.' Therefore, even if [plaintiff] is unable to establish all the elements of fraud, he might still recover under the Act ***." 64 Ill. App. 3d 190, 198, 380 N.E.2d 1040.

The court in *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267, after a thorough review of several judicial decisions interpreting the ICFDBPA, noted:

"There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties. [Citations.]

Since the Act affords even broader consumer protection than does the common law action of fraud, it is clear that a plaintiff suing under the Act need not establish all the elements of fraud

as the Act prohibits any deception or false promise. [Citation.] And it is clear from the language of the Act, particularly its reference to false promises, that liability is not limited to existing material facts. Furthermore, it is well established that under the Act the intention of the seller (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations. [Citations.]" (102 Ill. App. 3d 483, 495, 429 N.E.2d 1267.)

We found above that plaintiff has established a *prima facie* case of fraud based on the fact that Ogden has misrepresented the car Buechin bought as a "new" car without having informed her that the Turismo had had a previous owner prior to her signing the buyer's order. Using the same premise, we also conclude that plaintiff has established a *prima facie* case regarding defendant's violation of the ICFDBPA. See *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.

We reverse the trial court's granting of defendant's motion for a directed finding at the end of plaintiff's case on the issue of whether defendant violated the ICFDPBA and remand for further proceedings.

Defendant argues, without citation to authority in violation of Supreme Court Rules 341(e)(7) and 341(f) (107 Ill. 2d Rules 341(e)(7), 341(f)), that since Buechin paid for the car with full knowledge of the fact that it had 650 miles on it despite the erroneous odometer statement, plaintiff waived her cause of action for fraud and for violation of the ICFDBPA. We disagree.

■■■ As we noted above, we focus our inquiry on whether Buechin was informed as to the sale and recovery of the car prior to her entering into the transaction. We hold that Buechin did not waive her cause of action for fraud and for violation of the ICFDBPA, since she was not aware of all the material aspects of Ogden's fraudulent conduct. (See *Lee v. Heights Bank* (1983), 112 Ill. App. 3d 987, 446 N.E.2d 248.) On the evening of February 25, 1984, before she proceeded to sign a binding contract for the purchase of the Turismo, Buechin was not apprised of the prior sale to Heintz. On that evening she signed a binding contract to purchase the Turismo. As soon as she discovered the fraud, she could have exercised a statutory remedy under section 2—608 of the Uniform Commercial Code (UCC) of revoking her acceptance of the Turismo. (Ill. Rev. Stat. 1985, ch. 26, par. 2—608.) (See *Harney-Morgan Chevrolet Olds Co. v. Rabin* (1983), 118 Ill. App. 3d 602, 455 N.E.2d 130.) We note that, in fact, Buechin attempted to revoke her acceptance of the Turismo on March 10, 1984,

during her meeting with Evans. In the alternative, she had the option, which she exercised here, to seek her common law remedies not supplemented by the UCC (Ill. Rev. Stat. 1985, ch. 26, par. 1—103). (*Harney-Morgan Chevrolet Olds Co. v. Rabin* (1983), 118 Ill. App. 3d 602, 455 N.E.2d 130.) We conclude that she merely continued to perform a partially executed contract since it would have been prejudicial to discontinue performance, and, therefore, Buechin did not waive her right to damages for fraud. See *Havoco of America, Inc. v. Hilco, Inc.* (7th Cir. 1986), 799 F.2d 349.

■■■ Next plaintiff contends that the trial court erred in granting defendant's motion with respect to Ogden's violation of the Motor Vehicle Information and Cost Savings Act (MVICSA) (15 U.S.C. sec. 1981 *et seq.* (1982)). We agree.

Section 1988 of Title 15 provides:

"(a) Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be retained.

(b) No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule." (15 U.S.C. sec. 1988 (1982).)

The United States Court of Appeals for the Fifth Circuit in *Baker v. Cawthon Motor Co.* (5th Cir. 1980), 629 F.2d 410, held that the MVICSA was intended by Congress to apply to new cars as well as used cars:

"Although the danger of odometer tampering is perhaps greater in the used car market than in the sale of new cars, *** consumers rely upon odometer readings in both markets. Congress meant to insure that this reliance was not misplaced: 'Both the language of the statute and its history show that it has one purpose: to enable the purchaser of a motor vehicle to know how many miles the vehicle has traveled, as a guide to its safety, reliability and value.' " (629 F.2d 410, 412, quoting *Ryan v. Edwards* (4th Cir. 1979), 592 F.2d 756, 760.)

In *Hughes v. Box* (8th Cir. 1987), 814 F.2d 498, the court stated that given the broad purpose of the MVICSA to protect motor vehicle purchasers from inaccurate mileage representations by sellers, a transferor should, at the least, have some duty to specifically and unambiguously alert the transferor to the vehicle's actual mileage. (814 F.2d 498, 502.) We find that here defendant failed to do so.

■■■ ■ The MVICSA appears to require "scienter" in order for plaintiff to recover. In *Jones v. Fenton Ford, Inc.* (D. Conn. 1977), 427 F. Supp. 1328, the court stated that the rule of fraudulent intent applicable to the MVICSA is that civil liability may be imposed where it is proved that a defendant's statements were made carelessly or recklessly, without knowledge of their truth or falsity, or without reasonable grounds for belief in their truth, especially in a case where the defendant was under a duty to have the knowledge in question. (427 F. Supp. 1328, 1334.) We find that when Cycholl, as an agent for defendant, certified the computer-generated 10-miles odometer statement, he acted carelessly by not verifying the accuracy of that statement. Defendant had a statutory duty to ascertain the true odometer reading and so state on the statement. Plaintiff has thus established a *prima facie* case of violation of the MVICSA.

The trial court's judgment granting defendant's motion for a directed finding was against the manifest weight of the evidence on this issue. We reverse and remand for further proceedings regarding the issue of whether defendant violated the MVICSA.

■■■ Next, plaintiff contends that the trial court erred in granting defendant's motion regarding the issue of whether Ogden violated section 3—112.1 of the Motor Vehicle Code regarding odometer certification (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1.) Section 3—112.1 provides in pertinent part:

"(a) All titles issued by the Secretary of State after the effective date of this amendatory Act of 1980 shall provide for an odometer certification substantially as follows:

'I certify to the best of my knowledge that the odometer reading is and reflects the actual mileage of the vehicle unless one of the following statements is checked.'

\* \* \*

(b) When executing any transfer of title which contains the odometer certification as described in paragraph (a) above, each transferor of a motor vehicle must supply on the title form the following information:

(1) The odometer reading at the time of transfer;

(2) The date of transfer; and

(3) The transferor's name and current address.

(c) When the transferor signs the title transfer such transferor acknowledges that he or she is aware that Federal regulations and State law require him or her to state the odometer mileage upon transfer of ownership. An inaccurate or untruthful statement with intent to defraud subjects the transferor to liability for damages to the transferee pursuant to the Motor Vehicle Information and Cost Savings Act of 1972 \*\*\*. A State cause of action is hereby created by which any person who, with intent to defraud, violates any requirement imposed under this section shall be liable in an amount equal to the sum of:

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater, and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court." (Ill. Rev. Stat. 1985, ch. 95½, par. 3—112.1.)

The Illinois statute is patterned after the MVICSA, and liability for violation of this statute is to be found in the same manner as for the Federal statute. Therefore, since we have concluded that there was liability on the part of Ogden for violation of the MVICSA, we similarly find liability under the Illinois statute. As stated above under the Federal statute, an intent to defraud on the part of the transferor may be inferred from a showing of gross negligence or of a reckless disregard of facts indicating the vehicle's odometer statement is inconsistent with the true odometer reading. (See *Hall v. Riverside Lincoln-Mercury Sales, Inc.* (1986), 148 Ill. App. 3d 715, 499 N.E.2d 156.) It is not unreasonable to require an automobile dealer to ascertain that the odometer statement conforms to the odometer reading on the car in order to insure that the information that the customer receives is accurate and up-to-date. See *Hall v. Riverside Lincoln Mercury Sales, Inc.* (1986), 148 Ill. App. 3d 715, 499 N.E.2d 156.

We reverse the granting of defendant's motion for a directed finding on this issue and remand for further proceedings.

■ Next, plaintiff argues on appeal that the trial court erred in refusing to allow her expert witness to testify regarding the diminution in value of the motor vehicle purchased by Buechin. We disagree.

Plaintiff called James Switalski (Switalski) to testify as her expert witness. Switalski appears to be qualified to testify regarding automotive mechanical problems, but from our review of his qualifications as they appear in the record, we conclude that he is not qualified to provide expert opinions regarding the economic value of an automobile.

(See *Bangert v. Emmco Insurance Co.* (1953), 349 Ill. App. 257, 110 N.E.2d 528.) Therefore, we find that the trial court was correct in refusing to allow Switalski to testify as to the difference in value between a car with 10 miles on it and one with 650 miles on it.

We, therefore, find that the trial court properly refused to allow Switalski's testimony to be introduced into evidence.

We affirm in part, reverse in part and remand for further proceedings the judgment of the circuit court of Du Page County.

Affirmed in part, reversed in part and remanded.

INGLIS and WOODWARD, JJ., concur.