**ALLIED ROOFERS SUPPLY CORP., Plaintiff,**

v.

**JERVIN CONSTRUCTION, INC. and Vincent Pugliese, Defendants.**

**No. 86 Civ. 6150 (RWS).**

United States District Court, S.D. New York.

Dec. 15, 1987.

Lambert & Weiss, New York City (Kenneth L. Aron, of counsel), for plaintiff.

Tunstead, Schechter & Torre, New York City (Leonard J. Geraci, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff, Allied Roofers Supply Corp, ("Allied") has moved for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., on its claim to recover from defendants Jervin Construction Co ("Jervin") and Vincent Pugliese ("Pugliese") the price of a contract to supply roofing materials and to dismiss defendants' counterclaim. For the reasons stated below and upon the affidavits and argument submitted on October 23, 1987, Allied's motion is granted in part and denied in part.

*Prior Proceedings*

This action is based on Jervin's failure to pay the purchase price of roofing supplies sold and delivered to it by Allied pursuant to a credit agreement between the parties. Pugliese is alleged to be a surety to that contract. The amount due is $32,275.86. Defendants do not dispute that the goods were delivered nor that they have not paid for them. Defendants deny that there is diversity between the parties and assert by way of counterclaim that the goods and services provided by plaintiff were defective.

*Facts*

Allied is a distributor of roofing supplies incorporated, and with its principal place of business in the state of New Jersey. Jervin is a construction company incorporated and with its principal place of business in the state of New York, and Pugliese, the president of Jervin, is a New York resident. The materials supplied by Allied were to be used by Jervin as subcontractor in a job known as Hillside Honda. According to defendants, Allied was supposed to supply not only the materials, but also supervision in installation. In the course of the transactions between the parties, Pugliese signed a credit agreement as guarantor authorizing extension to Jervin of a credit line of at least $1,296. The materials were indeed supplied, and Jervin was supervised in the installation of the materials. However, supervision came not from Allied itself, but from the Barrett Company ("Barrett"), the manufacturer of the materials, and Allied claims that it was in no way connected with these services.

A dispute arose between Jervin and the general contractor, Viola Construction Corp. ("Viola") over the final payment due Jervin for its work on the Hillside Honda project. Jervin was paid $31,000 of the $42,500 owed it. That dispute has been

submitted to arbitration. In the arbitration proceeding Viola has counterclaimed, stating that the roof system furnished and installed by Jervin is defective in that it was installed in an incompetent, unprofessional and negligent manner. Jervin claims that "[t]he failure [of the roofing system] may be found to be due to defective materials and failure to properly direct, supervise and control the installation of the roof system, all which were the responsibility of Allied Roofers." Pugliese aff. para. 11.

### Diversity Jurisdiction

■ Before determining whether or not Allied is entitled to summary judgment, it is necessary to dispose of defendants' challenge to jurisdiction. Allied has submitted its certificate of incorporation issued by the state of New Jersey. Moreover, the Allied invoices that form the subject matter of this dispute show a New Jersey address. Defendants do not dispute that they are New York citizens and have offered no evidence to refute Allied's claim of citizenship. Thus, this court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### Summary Judgment

The question for the court on a motion for summary judgment is whether there is a genuine issue of fact necessitating trial. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the agreement is "so one-sided that one party must prevail as a matter of law," the motion will be granted. *Id.* 106 S.Ct. at 2512. Based on the law and facts presented, Allied is entitled to prevail on its claim for payment as a matter of law.

### Goods Sold and Delivered

■ Allied is entitled to payment from Jervin for the goods it supplied. Since the contract in question is one for the sale of goods, article two of the Uniform Commercial Code ("UCC") is controlling. U.C.C. § 2–709(1)(a) provides:

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages ... the price

(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer.

The goods are accepted when the buyer "does any act inconsistent with the seller's ownership." U.C.C. § 2–606(1)(c); *see also A.F.L. Falck S.p.A. v. E.A. Karay Co.*, 639 F.Supp. 314, 321 (S.D.N.Y.1986). Jervin accepted the goods by using them in the Hillside Honda project.

Acceptance of goods may later be revoked if, for example, the buyer's "acceptance was reasonably induced ... by the difficulty of discovery before acceptance," however, such revocation must come "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." U.C.C. § 2–608(1)(b), (2); *see V. Zappala & Co. v. Pyramid Co.*, 81 A.D.2d 983, 439 N.Y.S.2d 765, 767 (3d Dep't 1981).

Jervin never revoked its acceptance of the goods. Pugliese, by affidavit, asserts that he phoned Allied and told it not to make the last two deliveries, but that the deliveries were made anyway and that they were signed for not by a Jervin employee but by a representative of Viola. However, there are no allegations that Allied was told that the goods, once signed for, were rejected, there is no indication that the goods were not used in the Hillside Honda project, and there is no indication that Allied was notified that Viola, the general contractor, had no authority to sign for the goods. In fact it appears that the first Allied heard of any problem with accepted goods was in response to its filing this suit. Thus, all the materials were accepted, and that acceptance was never revoked. Jervin, therefore, must pay Allied the price of the goods in accordance with the UCC.

### Suretyship

■ The credit agreement upon which Allied bases its surety claim shows authorization for credit line of $1296, representing

the amount of credit needed by Jervin in the month following the execution of the agreement. The document does not state that it represents authorization for a rolling line of credit, and indeed it is as to this that the parties disagree. Since there is an issue of fact as to whether Pugliese intended to guaranty the entire line of credit extended to Jervin, and since a court is not forbidden from examining parole evidence to explain a document that is not fully integrated, c.f. *Braten v. Bankers Trust Co.*, 60 N.Y.2d 155, 468 N.Y.S.2d 861, 456 N.E.2d 861 (1983), summary judgment is denied as against the defendant Pugliese.

### Contribution

 Defendants' counterclaim for indemnity or contribution with respect to a claim asserted against it by a nonparty to this lawsuit, however, is dismissed as unripe. "'Contribution involves an apportionment of responsibility where wrongdoers are *in pari delicto*,'" whereas indemnity "shifts the entire loss from one compelled to pay, without regard to its fault, to another party who should bear responsibility for that loss because it is the actual wrongdoer." *Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 655 F.Supp. 346, 361 (S.D.N.Y.1987) (quoting *Westchester County v. Welton Becket Assoc.*, 102 A.D.2d 34, 46, 478 N.Y. S.2d 305 (2d Dep't 1984)).

However, a jury cannot determine that Allied should contribute to the damages Jervin must pay Viola, nor can it determine that the damages are in fact wholly Allied's responsibility, when it has not been determined whether or in what manner Jervin is responsible for any damage Viola may or may not have suffered.

Moreover, since Allied is not a party to the arbitration, it is not bound by any determination the arbitrator makes against it, and since Viola is not a party to this litigation, this court cannot determine how or if it was injured by Allied. While New York law generally allows an action for indemnity to proceed as a third party complaint before liability has been established, this practice exists "for the sake of fairness and judicial economy ... so that all parties may establish their rights and liabilities in one action." *Burgundy Basin Inn v. Watkins Glen Grand Prix*, 51 A.D.2d 140, 379 N.Y.S.2d 873, 880 (4th Dep't 1976). Here, neither Viola, nor Barrett are parties to the action. Thus, neither fairness nor judicial economy would be served by permitting the counterclaim to remain.

### Conclusion

Allied's motion for summary judgment on its complaint is granted as against defendant Jervin but denied as against defendant Pugliese. Defendants' counterclaim is dismissed without prejudice as unripe.

Discovery on the surety claim will be completed by February 10, 1988 and the pretrial order filed February 17, 1988.

IT IS SO ORDERED.