**Herman E. MULLER, Jr., as the Executor under the Last Will and Testament of Leopold Stokowski, Plaintiff,**

v.

**The WALT DISNEY PRODUCTIONS, The Walt Disney Company, and Buena Vista Home Video, Defendants.**

**The WALT DISNEY COMPANY and Buena Vista Home Video, Plaintiffs,**

v.

**Herman E. MULLER, in his capacity as Executor for the Estate of Leopold Stokowski, deceased, Defendant.**

Nos. 93 Civ. 0427 (GLG), 93 Civ. 6175 (GLG).

United States District Court, S.D. New York.

Jan. 24, 1994.

Richard H. Dolan, Barlett, Pontiff, Stewart & Rhodes, P.C., Glens Falls, NY, for Herman E. Muller, Jr.

Elizabeth M. Guggenheimer, Dewey Ballantine, Clark E. Walter, Edward J. Nowak, Eric J. Lobenfeld, New York City, for Walt Disney Production.

Elizabeth M. Guggenheimer, Clark E. Walter, Edward J. Nowak, Eric J. Lobenfeld, New York City, for Walt Disney Co., Buena Vista Home Video.

## MEMORANDUM DECISION

GOETTEL, District Judge.

The cases before us in this motion arose from a 1939 contract between Leopold Stokowski, then the conductor of the Philadelphia Orchestra, and Walt Disney Productions, entered into for the purpose of making the beautiful music that accompanied the movie "Fantasia." Somewhat surprisingly, "Fantasia" was not a financial success upon its initial release. However, "Fantasia's" fall 1991 release on videocassette and laser disc has been profitable, to the tune of $190 million, according to Stokowski's estate. This event turned relations between Disney and various participants in the making of "Fantasia" discordant, leading to several different lawsuits, including those before us today. The instant motion to dismiss by Muller, the Executor under the Last Will and Testament of Leopold Stokowski, concerns claims by Disney for indemnification and a setoff from Stokowski's estate against possible judgments on behalf of the Philadelphia Orchestra Association and the publisher of Igor Stravinsky's "The Rite of Spring."

## PROCEDURAL HISTORY

In May 1992, the Philadelphia Orchestra Association (hereafter the "Association") filed suit against Disney in the Eastern District of Pennsylvania. *See The Philadelphia Orchestra Ass'n v. The Walt Disney Co.*, No. 92 Civ. 2634 (E.D.Pa.) (McGlynn, J.) On December 30, 1992 Disney filed suit against Muller, also in the Eastern District of Pennsylvania, seeking a declaration that Stokowski's estate has no rights in connection with the sale and distribution of "Fantasia," and that Stokowski's estate must indemnify Disney for any sums adjudged against Disney in the Association's lawsuit. *See The Walt Disney Co. v. Muller*, No. 92 Civ. 7440, 1993 WL 273416 (E.D.Pa.) (McGlynn, J.).

In January 1993, Muller sued Disney in the Southern District of New York. *See*

*Muller v. Disney,* No. 93 Civ. 0427 (S.D.N.Y.) (Goettel, J.). The apparent reason Muller sued in this district is that Stokowski's will was probated in the Westchester County Surrogate's Court. (While he died in England in 1977, Stokowski lived out his life as a domiciliary of Scarsdale, New York.) Muller's Amended Complaint seeks, inter alia, fifty percent of Disney's profits from home sales of "Fantasia." Disney filed a motion in this court in February 1993 seeking to transfer *Muller v. Disney* to the Eastern District of Pennsylvania, or in the alternative, to stay the action pending resolution of *Disney v. Muller.* On May 26, 1993, we denied Disney's motion. *See Muller v. The Walt Disney Productions,* 822 F.Supp. 1033 (S.D.N.Y.1993). On July 20, 1993, Judge McGlynn granted Muller's motion to transfer *Disney v. Muller* to this district.

The other related lawsuit against Disney is *Boosey & Hawkes Music Publishers, Ltd. v. The Walt Disney Co.,* No. 93 Civ. 0373 (S.D.N.Y.) (Conboy, J.), in which the publishers of Igor Stravinsky's "The Rite of Spring," which was featured in "Fantasia," are seeking damages on the grounds that a 1939 license did not grant Disney the right to exploit "The Rite of Spring" on videocassette.

## FACTS

Muller's motion seeks to dismiss various Disney claims for failure to state a claim under which relief can be granted, and as time barred. The first object of Muller's motion is Disney's claim, embodied in Count II of the complaint in *Disney v. Muller,* and the first counterclaim in *Muller v. Disney,* that Stokowski's estate must indemnify Disney against sums awarded to the Association because Stokowski was contractually obligated to deliver to Disney an agreement between the Orchestra and Disney providing that the Orchestra and its members would retain no rights in connection with "Fantasia." Disney's second counterclaim in *Muller v. Disney* seeks, on the same grounds, to set off any sums awarded to the Association against any sums awarded to Stokowski's estate.

The basis for this claim is a contract dated January 18, 1939 between Leopold Stokowski and Walt Disney Productions, engaging Stokowski's services in arranging, conducting, and consulting on the music for the motion picture "Fantasia." Clause 6 provides in part:

> You [Stokowski] agree to use your best efforts, at your own expense, to obligate the Philadelphia Symphony Orchestra Association, Inc. to do said recording. You further agree to furnish us [Disney] with a written commitment executed by the properly constituted and empowered authority, granting us the right to use the said Philadelphia Symphony Orchestra, its name and the music rendered by it hereunder for the purposes herein provided and contemplated in this contract.

The second object of Muller's motion to dismiss is Disney's claim, set forth in the second and third counterclaims in *Muller v. Disney,* that since the Association and Stravinsky's publisher are after the same videocassette and laser disc profits that Stokowski's estate is pursuing, any award in favor of the Association or Stravinsky's publisher must be set off against any award for Stokowski's estate. Disney points out that both the Association and Stokowski's estate seek to split the profits with Disney "fifty-fifty," and that all three suits against Disney seek a sum equal to any unjust enrichment by Disney. A setoff, Disney argues, is the proper mechanism for avoiding inconsistent judgments.

## DISCUSSION

### 1. Choice of Law

The initial question is which state's laws we must apply. The well-established rule is that a federal court sitting in diversity follows the choice of law rules of the state in which it is located. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since Muller began his action against Disney in New York, we apply New York's choice of law rules. However, since Disney began its action against Muller in the Eastern District of Pennsylvania, and the action was subsequently transferred to our district pursuant to 28 U.S.C. § 1404(a) after a motion by Muller, we must apply Pennsylvania's choice of law rules in

Disney's action. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

■ New York courts apply a "paramount interest" test to choice of law disputes involving contract issues. *Hutner v. Greene,* 734 F.2d 896, 899 (2d Cir.1984). "Under such a test, 'the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'" *Id.* (citations omitted). Pennsylvania courts apply a combination of "interest analysis" and the "significant relationship" approach of the Restatement Second of Conflicts of Law to choice of law disputes involving contract issues. *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311 (3d Cir.1978). This approach "takes into account both the grouping of contacts with the various concerned jurisdictions and the interests and policies that may validly be asserted by each jurisdiction." *Id.*

Under these similar approaches, the most likely candidates to supply the governing law in this case are California and Pennsylvania. The central issue is the relationship between Stokowski and Disney, as embodied in the 1939 contract. The contract was executed in California, and performed largely in Pennsylvania. At the time the contract was signed, as well as at the present, Disney had its principal place of business in Burbank, California. Stokowski, we were informed at oral argument, lived in many different places around the United States during this period, including California and Pennsylvania. We need not choose between California and Pennsylvania for purposes of this motion, since under either state's laws, the outcome is the same.

2. Indemnification

■ We begin with a brief discussion of ripeness. Whether a question is ripe for adjudication "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). Since Disney has not yet, and may never, incur the liability to the Association for which it seeks indemnification, the possibility of unripeness must be considered.

Indeed, in another case in this district in which the defendant raised a counterclaim demanding that the plaintiff provide indemnification or contribution against a claim asserted by a nonparty, the counterclaim was dismissed as unripe. *See Allied Roofers Supply Corp. v. Jervin Construction, Inc.,* 675 F.Supp. 130, 133 (S.D.N.Y.1987). However, the result in that case rested largely on the fact that the issue of indemnification could not be determined without knowing more about the nonparty claim. *Id.* In the instant case, by contrast, we already have all the information we need to adjudicate. Disney's demands for indemnification. Following Disney's pleadings, the issue turns on our interpretation of the 1939 contract between Disney and Stokowski, and the general relationship between Disney and Stokowski. The exact nature of the liability between Disney and the Association will not add anything that is necessary to our determination today. Therefore, we find that Disney's claims for indemnification are ripe for adjudication.

In deciding whether Disney's claims for indemnification and a setoff should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept all factual allegations in Disney's pleadings as true, and draw all reasonable inferences in the favor of Disney. *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988). We can only dismiss where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

■ The first issue is whether Stokowski's 1939 contract with Disney created an express duty to indemnify. Disney's pleadings suggest such a claim, although in their motion papers they argue only for the existence of an implied duty to indemnify. Nevertheless,

we will briefly consider the express terms of the contract.

Clause 6, in which Stokowski agrees to furnish a written commitment "granting [Disney] the right to use the said Philadelphia Symphony Orchestra, its name and the music rendered by it hereunder for the purposes herein provided and contemplated in this contract," contains nothing which even remotely suggests an express duty to indemnify. Furthermore, the statement in clause 7 providing that "you [Stokowski] agree to hold us harmless from and against any and all liability for or on account of the payment of any salary to musicians" shows that the parties knew how to create an express indemnification provision. Since they did not create such a provision with respect to Stokowski's agreement to deliver a contract between the Orchestra and Disney, the only reasonable conclusion is that they did not intend to do so.

Disney has argued, however, that clause 6 of the contract created an *implied* duty on the part of Stokowski to indemnify Disney. Disney argues that since Stokowski had a contractual duty to deliver a contract between Disney and the Orchestra, and since it was foreseeable that if he did not obtain the requisite approvals from the Orchestra Disney could be obliged to pay damages for unauthorized use, therefore Stokowski has an implied duty to indemnify Disney against any such damages.

California law recognizes two varieties of implied indemnification, both rooted in equitable considerations. Implied indemnification can arise by "contractual language not specifically dealing with indemnification or by the equities of the particular case." *E.L. White, Inc. v. City of Huntington Beach*, 21 Cal.3d 497, 506–07, 146 Cal.Rptr. 614, 619, 579 P.2d 505, 507 (1978) (en banc).

> The doctrine of comparative equitable indemnity is applied to multiple tortfeasors and is designed to apportion loss among tortfeasors in proportion to their relative culpability. . . . Implied contractual indemnity is applied to contract parties and is designed to apportion loss among contract parties based on the concept that one who enters a contract agrees to perform

the work carefully and to discharge foreseeable damages resulting from that breach.

*Smoketree–Lake Murray Ltd. v. Mills Concrete Construction Co.*, 234 Cal.App.3d 1724, 1736, 286 Cal.Rptr. 435, 441 (1991) (citations omitted). In this case, Disney argues that Stokowski's allegedly implied duty to indemnify is contractual. Although there is apparently some dispute in California concerning the continued validity of the theory of implied contractual indemnity, *see Seamen's Bank for Savings v. Superior Court*, 190 Cal.App.3d 1485, 1493, 236 Cal.Rptr. 31, 36 (1987), this is not relevant to our decision, since we do not find the doctrine applicable to the facts as alleged by Disney.

A case often cited by courts employing a theory of implied contractual indemnity is *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (superseded by statute). *See Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986); *Bear Creek Planning Committee v. Title Insurance & Trust Co.*, 164 Cal.App.3d 1227, 1237, 211 Cal.Rptr. 172, 178 (1985); *San Francisco Unified School District v. California Building Maintenance Co.*, 162 Cal. App.2d 434, 447–48, 328 P.2d 785, 793–94 (1958). In *Ryan*, the Supreme Court found that a stevedoring contractor was obliged to indemnify a shipowner against damages suffered by a longshoreman as a result of the stevedoring contractor's improper stowage of cargo. The Supreme Court declared that "[c]ompetency and safety of stowage" are "of the essence of petitioner's stevedoring contract." 350 U.S. at 133, 76 S.Ct. at 237.

Disney's pleadings lend no support to the conclusion that there was anything special about the contractual relationship between Stokowski and Disney that would warrant implying a contract for indemnification against the Orchestra's claims that Disney has violated their rights. Certainly, delivering an airtight agreement between the Orchestra and Disney was not the "essence" of the contractual relationship between Disney and Stokowski. Stokowski was a conductor, not a lawyer. Nor do Disney's pleadings lend any support to the argument that a

claim by the Orchestra for a share of video-cassette and laser disc sales was a reasonably foreseeable result of Stokowski's alleged failure to deliver an airtight agreement between the Orchestra and Disney. In short, Disney has made no allegations about the contractual relationship between Stokowski and Disney that could support a finding of implied contractual indemnity.

The result is the same under Pennsylvania law. Pennsylvania courts have repeatedly stated that the right of indemnity "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 250–51, 465 A.2d 1231, 1236 (1983) (quoting *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951)). This is a tort-based theory of implied indemnification, which is clearly inapposite in this case, since Disney has not alleged that Stokowski was negligent towards the Orchestra.

The parties have not presented us with any cases in Pennsylvania which apply an implied *contract* theory of indemnification. Disney has cited *Borough of Wilkinsburg v. Trumbull–Denton Joint Venture*, 390 Pa.Super. 580, 568 A.2d 1325, *appeal denied*, 526 Pa. 626, 584 A.2d 310 (1990), but this is an insurance case revolving around subrogation, rather than indemnification. If an implied contract theory of indemnification does exist in Pennsylvania, it would not apply to this case for the reasons stated in connection with the law of California.

Muller also argues that Disney's claim for implied indemnification is time-barred. We do not reach this issue, since we find that Disney has not properly pled a claim for implied indemnification.

In sum, we find that Disney has failed to state a claim for either express or implied indemnification.

### 3. Setoff

■ Disney argues that it is entitled to. a counterclaim "in the nature of a set-off" of any sums adjudged against it in the Association's suit, or in Stravinsky's publisher's suit, against any sums adjudged against it in Stokowski's estate's suit. Disney grounds this argument in arguments about fairness, rather than in any specific caselaw. Disney argues that all three suits are after the same money—the profits from the videocassette and laser disc sales of "Fantasia"—and that the only way to avoid inconsistent judgments is through a setoff. Stokowski's estate argues that the three suits are based on separate contracts and thus a judgment in one should not affect a judgment in another. Disney responds by pointing out that the suits have non-contractual claims as well, such as unjust enrichment, which are all after the same pot of profits from videocassette and laser disc sales of "Fantasia."

While we are not unsympathetic to Disney's desire to avoid inconsistent judgments in the three afore-mentioned suits, we do not think that a counterclaim for a setoff is the proper legal mechanism.[1]

■ The common law doctrine of setoff allows parties that owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance. *Darr v. Muratore*, 8 F.3d 854 (1st Cir.1993); *Matter of Bevill, Bresler & Schulman Asset Management*, 896 F.2d 54, 57 (3d Cir.1990); *Kruger v. Wells Fargo Bank*, 11 Cal.3d 352, 362, 113 Cal.Rptr. 449, 455, 521 P.2d 441, 447 (1974). In Pennsylvania, a setoff is similarly described as "a counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action." *M.N.C. Corp. v. Mount Lebanon Medical Center, Inc.*, 510 Pa. 490, 495, 509 A.2d 1256, 1259 (1986) (citation omitted); *accord Hill v. Port Authority Transit System of Allegheny County*, 137 Pa.Cmwlth. 132, 140, 585 A.2d 1129, 1133 (1991), *aff'd*, 531 Pa. 457, 613 A.2d 1206 (1992).

---

1. It might be helpful to multi-district these related suits, although that would not necessarily aid in avoiding inconsistent judgments.

508

Regardless of the exact wording, the doctrine of setoff requires that the two parties involved have mutual demands or debts. In the instant case, Disney is seeking to offset demands by three separate parties against it. We know of no cases applying the doctrine of setoff in such a situation. The doctrine of setoff was formulated for the convenience of two opposing parties owing mutual debts, and in order to avoid unnecessarily bankrupting a party. It is not a mechanism for avoiding inconsistent judgments among three or more parties.

## CONCLUSION

Summing up, we found (i) that Disney's pleadings cannot support their claim that Stokowski's estate must indemnify Disney for possible sums adjudged against Disney in the Philadelphia Orchestra Association's lawsuit; and (ii) that Disney's claims that sums adjudged against it in the Association's lawsuit and in the lawsuit of Stravinsky's publisher should be set off against sums adjudged against it in Stokowski's estate's lawsuit do not state a valid cause of action. We therefore grant Muller's motion to dismiss Disney's counterclaims in *Muller v. Disney* and count II of Disney's complaint in *Disney v. Muller.*

**SO ORDERED.**